UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LEWIS LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 19 cv 2762 |
| | ) | |
| SHERIFF OF COOK COUNTY | ) | Judge John Z. Lee |
| THOMAS J. DART, in his official capacity, | ) | |
| COOK COUNTY, a local government, | ) | |
| LIEUTENANT DARNICE K. WIGGINS, | ) | JURY TRIAL DEMANDED |
| LIEUTENANT ANTHONY J. SEVENING, | ) | |
| SERGEANT CARL B. BERRY, | ) | |
| SERGEANT STEVEN M. ZAREMBA, | ) | |
| OFFICER M.  PERRY – COOK COUNTY, | ) | |
| OFFICER J. ALANIS – COOK COUNTY, | ) | |
| GINA J. CHUNG, PA-C, | ) | |
| DANIEL J. KACZROWSKI, PA-C, | ) | |
| KIM M. ANDERSON, R.N., | ) | |
| UMEADI P. IMANLIHEN-IYARE, R.N., | ) | |
| LINDA MILLER, R.N., UNKNOWN | ) | |
| (John Doe) MEDICAL STAFF | ) | |
| SUPERVISORS/ and/or EMPLOYEES of | ) | |
| ILLINOIS RIVER CORRECTIONAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FOURTH AMENDED COMPLAINT

NOW COMES Plaintiff, LEWIS LOVE, by and through his attorneys, MULHERIN,

REHFELDT & VARCHETTO, P.C., and complaining of the Defendants, SHERIFF OF COOK

COUNTY THOMAS J. DART, COOK COUNTY, LIEUTENANT DARNICE K. WIGGINS,

LIUTENANT ANTHONY J. SEVENING, SERGEANT CARL B. BERRY, SERGEANT

STEVEN M. ZAREMBA, OFFICER M. PERRY – COOK COUNTY, OFFICER J. ALANIS –

COOK COUNTY, GINA J. CHUNG, PA-C, DANIEL J. KACZROWSKI, PA-C, KIM M.

ANDERSON, R.N., UMEADI P. IMANLIHEN-IYARE, R.N., LINDA MILLER, R.N.,

UNKNOWN (John Doe) MEDICAL STAFF/SUPERVISORS/ and/or EMPLOYEES of ILLINOIS RIVER CORRECTIONAL CENTER, and each of them, alleges and states as follows:

## JURISDICTION AND VENUE

1.  This action is brought, in part, pursuant to 42 U.S.C § 1983 for deprivation of LEWIS LOVE's constitutional civil rights, jurisdiction is, therefore, appropriate under 28 U.S.C. § 1331 & 1343. The state law claims are properly before this court via supplemental jurisdiction under 28 U.S.C. § 1367.

2.  The claims asserted herein arose in the area encompassed by the United States District Court for the Northern District of Illinois, and venue is, therefore, proper under 28 U.S.C § 1391(b).

## PARTIES

3.  Plaintiff, LEWIS LOVE, was at the initial times relevant to this Complaint, a pretrial detainee in sole custody of Cook County Jail. Plaintiff was subsequently an inmate in the custody of the Illinois Department of Corrections at Illinois River Correctional Center.

4.  Defendant, SHERIFF OF COOK COUNTY THOMAS J. DART (hereinafter "SHERIFF DART"), was, at all times relevant to this Complaint, the chief officer of the Cook County Sheriff's Office, and, in that position, runs the Cook County Jail. Defendant, SHERIFF DART, is sued in his official capacity.

5.  Defendant, COOK COUNTY, was, at all times relevant to this Complaint, the local government entity that includes the following departments relevant to this Complaint:

   a. COOK COUNTY DEPARTMENT OF CORRECTIONS;
   b. OFFICE OF THE COOK COUNTY SHERIFF; and
   c. CERMAK HEALTH SERVICES OF COOK COUNTY.

6. LIEUTENANT DARNICE K. WIGGINS (hereinafter "LIEUTENANT WIGGINS") was a correctional lieutenant employed by the COOK COUNTY DEPARTMENT OF CORRECTIONS and/or OFFICE OF THE COOK COUNTY SHERIFF and was the Watch Lieutenant / Commander in and over Division 8 of the Cook County Jail at all relevant times and contributed to the conditions leading to Plaintiff's injuries through her actions and/or omissions. LIEUTENANT WIGGINS is sued in her individual capacity as well as in her capacity as an agent and employee of the COOK COUNTY.

7. LIEUTENANT ANTHONY J. SEVENING (hereinafter "LIEUTENANT SEVENING") was a correctional lieutenant employed by the COOK COUNTY DEPARTMENT OF CORRECTIONS and/or OFFICE OF THE COOK COUNTY SHERIFF and was the Watch Lieutenant / Commander in and over Division 8 of the Cook County Jail at all relevant times and contributed to the conditions leading to Plaintiff's injuries through his actions and/or omissions. LIEUTENANT SEVENING is sued in his individual capacity as well as in his capacity as an agent and employee of the COOK COUNTY.

8. SERGEANT CARL B. BERRY (hereinafter "SERGEANT BERRY") was a correctional sergeant employed by the COOK COUNTY DEPARTMENT OF CORRECTIONS and/or OFFICE OF THE COOK COUNTY SHERIFF and was the sergeant in and over Division 8 of the Cook County Jail at all relevant times and contributed to the conditions leading to Plaintiff's injuries through his actions and/or omissions. SERGEANT BERRY is sued in his individual capacity as well as in his capacity as an agent and employee of the COOK COUNTY.

9. SERGEANT STEVEN M. ZAREMBA (hereinafter "SERGEANT ZAREMBA") was a correctional sergeant employed by the COOK COUNTY DEPARTMENT OF CORRECTIONS and/or OFFICE OF THE COOK COUNTY SHERIFF and was the sergeant in and

3

over Division 8 of the Cook County Jail at all relevant times and contributed to the conditions leading to Plaintiff's injuries through his actions and/or omissions. SERGEANT ZAREMBA is sued in his individual capacity as well as in his capacity as an agent and employee of the COOK COUNTY.

10. OFFICER M. PERRY – COOK COUNTY (hereinafter "OFFICER PERRY") was a correctional officer employed by the COOK COUNTY DEPARTMENT OF CORRECTIONS and/or OFFICE OF THE COOK COUNTY SHERIFF and was the officer in and over Division 8 Living Unit 3F of the Cook County Jail at all relevant times and contributed to the conditions leading to Plaintiff's injuries through his actions and/or omissions. OFFICER PERRY is sued in his individual capacity as well as in his capacity as an agent and employee of the COOK COUNTY.

11. OFFICER J. ALANIS – COOK COUNTY (hereinafter "OFFICER ALANIS") was a correctional officer employed by the COOK COUNTY DEPARTMENT OF CORRECTIONS and/or OFFICE OF THE COOK COUNTY SHERIFF and was the officer in and over Division 8 Living Unit 3F of the Cook County Jail at all relevant times and contributed to the conditions leading to Plaintiff's injuries through his actions and/or omissions. OFFICER ALANIS is sued in his individual capacity as well as in his capacity as an agent and employee of the COOK COUNTY.

12. GINA J. CHUNG, PA-C was a certified physician assistant employed by CERMAK HEALTH SERVICES OF COOK COUNTY and was a medical professional responsible for examining and providing medical care to Plaintiff at all relevant times, and contributed to the injuries suffered by Plaintiff through her actions and/or failure to treat Plaintiff. She is sued in her individual capacity as well as her capacity as an agent and employee of CERMAK HEALTH SERVICES OF COOK COUNTY.

4

13. DANIEL J. KACZROWSKI, PA-C was a certified physician assistant employed by CERMAK HEALTH SERVICES OF COOK COUNTY and was a medical professional responsible for examining and providing medical care to Plaintiff at all relevant times, and contributed to the injuries suffered by Plaintiff through his actions and/or failure to treat Plaintiff. He is sued in his individual capacity as well as his capacity as an agent and employee of CERMAK HEALTH SERVICES OF COOK COUNTY.

14. KIM M. ANDERSON, R.N. was a registered nurse employed by CERMAK HEALTH SERVICES OF COOK COUNTY and was a medical professional responsible for examining and providing medical care to Plaintiff at all relevant times, and contributed to the injuries suffered by Plaintiff through her actions and/or failure to treat Plaintiff. She is sued in her individual capacity as well as her capacity as an agent and employee of CERMAK HEALTH SERVICES OF COOK COUNTY.

15. UMEADI P. IMANLIHEN-IYARE, R.N. was a registered nurse employed by CERMAK HEALTH SERVICES OF COOK COUNTY and was a medical professional responsible for examining and providing medical care to Plaintiff at all relevant times, and contributed to the injuries suffered by Plaintiff through her actions and/or failure to treat Plaintiff. She is sued in her individual capacity as well as her capacity as an agent and employee of CERMAK HEALTH SERVICES OF COOK COUNTY.

16. LINDA MILLER, R.N. was a registered nurse employed by CERMAK HEALTH SERVICES OF COOK COUNTY and was a medical professional responsible for examining and providing medical care to Plaintiff at all relevant times, and contributed to the injuries suffered by Plaintiff through her actions and/or failure to treat Plaintiff. She is sued in her individual capacity

5

as well as her capacity as an agent and employee of CERMAK HEALTH SERVICES OF COOK COUNTY.

17. UNKNOWN (John Doe) MEDICAL STAFF/SUPERVISORS/ and/or EMPLOYEES of ILLINOIS RIVER CORRECTIONAL CENTER were employees of the Illinois Department of Corrections through Illinois River Correctional Center at all relevant times and contributed to the injuries suffered by Plaintiff through their actions and/or failure to treat Plaintiff. They are all sued in their individual capacities as agents and employees of Illinois River Correctional Center.

### LITIGATION HISTORY

18. Plaintiff has not filed any other lawsuits in State or Federal Court dealing with the same facts in this Complaint.

19. Plaintiff has no prior history of lawsuits in State or Federal Court while he was incarcerated.

20. Plaintiff filed his original Complaint in this matter on April 24, 2019, and subsequently filed his First Amended Complaint on July 11, 2019. Assigned counsel for Plaintiff filed his Second Amended Complaint on December 6, 2019, and filed his Third Amended Complaint on January 13, 2020.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. Plaintiff exhausted all administrative remedies available to him relating to the facts in this Complaint.

### FACTS

22. On January 7, 2019, Plaintiff was being held as a pretrial detainee in a living unit facility at the Cook County Jail, Division 8, Deck 3F.

23. At approximately 8:50 A.M., on January 7, 2019, Plaintiff walked into the restroom within his living unit facility to rinse out and fill his cup with water.

24. At that time, Plaintiff slipped and fell in the restroom due to wet, greasy, and/or oily floor conditions.

25. As a result of his fall, Plaintiff landed on his back, the back of Plaintiff's head struck the ground, and Plaintiff experienced trauma to his head, back, elbows, and forearms.

26. Immediately after his fall, Plaintiff experienced dizziness and a painful headache.

27. Immediately after leaving the restroom after his fall, Plaintiff notified the on-duty Officer, OFFICER M. PERRY, of his fall and injuries, and requested immediate medical treatment.

28. OFFICER M. PERRY told Plaintiff to inform the on-duty Nurse, LINDA MILLER, R.N., during medication pass-out later that morning, and said Officer refused to provide any further attention to Plaintiff's requests.

29. Hours thereafter during medication pass-out, Plaintiff informed said on-duty Nurse, LINDA MILLER, R.N., of his trauma and pain, and requested medical evaluation and treatment. Without examining Plaintiff, said Nurse stated, "You're okay," and refused any further attention to Plaintiff.

30. Thereafter, Plaintiff submitted a "pink slip" requesting medical evaluation and treatment.

31. Later that day, Plaintiff approached Head Nurse, KIM M. ANDERSON, R.N., informed her of his fall, trauma, and pain, and requested medical treatment. Said Head Nurse told Plaintiff she would try to have a doctor evaluate him.

32.     The following day, January 8, 2019, Plaintiff's pain caused by the fall was worsening.  Plaintiff made a request for medical treatment to the on-duty Officer and Sergeant, OFFICER M. PERRY and SERGEANT BERRY.

33.     Said Officer and Sergeant denied Plaintiff's requests.

34.     On January 8, 2019, Plaintiff was seen by nurse, UMEADI P. IMANLIHEN-IYARE, R.N., at which time, she prescribed Plaintiff over-the-counter pain medication, and failed to refer Plaintiff to her superior medical professionals to evaluate Plaintiff's pain and injuries.

35.     Between January 8, 2019, and January 16, 2019, Plaintiff submitted numerous "pink slip" medical treatment requests for the pain he was suffering, but continued to be denied medical attention.

36.     On or about January 17, 2019, Head Nurse, KIM M. ANDERSON, R.N., informed Plaintiff that he had to wait twenty-seven (27) days to receive a CT scan and x-rays before she could administer or prescribe any treatment.  Plaintiff proceeded to wait those twenty-seven (27) days.

37.     On or about January 23, 2019, Plaintiff was examined and evaluated by physician assistant, GINA J. CHUNG, PA-C, for the injuries and pain complained of by Plaintiff, and continued only the course of medical treatment using over-the-counter pain medication originally put in place by the nursing staff.

38.     On or about February 13, 2019, Plaintiff was examined and evaluated by DANIEL J. KACZROWSKI, PA-C, for the injuries and pain complained of by Plaintiff and reviewed his CT scan and x-ray.  Plaintiff continued only to be prescribed over-the-counter pain medication.

39.     Plaintiff continued to suffer pain that traced back to his January 7, 2019, slip and fall. Plaintiff has also since the fall suffered from migraine headaches, sensitivity to loud noises,

intermittent back pain, numbness in his elbows and forearms, and diarrhea and lack of control of his bowels.

40.     Plaintiff continued to seek medical treatment for his injuries while he was incarcerated at Illinois River Correctional Center, but UNKNOWN (John Doe) MEDICAL STAFF SUPERVISORS/ and/or EMPLOYEES of ILLINOIS RIVER CORRECTIONAL CENTER continued to ignore Plaintiff's complaints of serious pain.

41.     Upon information and belief, the Officers and Sergeants of COOK COUNTY DEPARTMENT OF CORRECTIONS and/or OFFICE OF THE COOK COUNTY SHERIFF would select and pay inmates to clean the restroom in the living unit facilities.

42.     Upon information and belief, no one had cleaned the restroom in Division 8, Deck 3F of the Cook County Jail in the days immediately prior to or on January 7, 2019.

## I.     42 U.S.C. § 1983

### COUNT I

**FAILURE TO PROVIDE HABITABLE CONDITIONS OF CONFINEMENT – Sheriff Thomas J. Dart, Cook County, Lieutenant Darnice K. Wiggins, Lieutenant Anthony J. Sevening, Sergeant Carl B. Berry, Sergeant Steven M. Zaremba, Officer M. Perry – Cook County, Officer J. Alanis – Cook County.**

43.     Plaintiff restates and reincorporates Paragraphs 1–42 as Paragraph 43 of Count I of this Complaint.

44.     The condition of the living unit restroom floor of Division 8, Deck 3F, of the Cook County Jail, before and on January 7, 2019, provided a serious risk to the health and safety of Plaintiff and all other individuals detained there.

45.     Defendants to Count I, while aware of the condition of said restroom floor, were deliberately indifferent to the serious risk to health and safety caused by the conditions of said

9

restroom facilities, and did nothing to remedy the condition and/or provide warning to the detainees of said living unit.

46. The actions and/or inactions, of Defendants to Count I, described above, whereby said Defendants were aware of, but deliberately, willfully, and wantonly ignored the maintenance conditions of restroom facilities within the living unit, including the obvious serious risk to the health and safety of Plaintiff, and failed to take appropriate steps to protect him, constituted deliberate indifference to Plaintiff's deprivation of the minimal civilized measure of life's necessities, thus violating the Fourteenth Amendment of the Constitution.

47. Further, said Defendants' conduct not only allowed for the serious health and safety risk to exist, but also led to its creation.

48. The Constitution violations detailed above were caused by the customs, policies, and practices of Defendants to Count I, or any of them, and the promulgation, enforcement, and dissemination of same.

49. As the Sheriff of Cook County and the chief officer of the COOK COUNTY DEPARTMENT OF CORRECTIONS, SHERIFF DART's duties and responsibilities included, but were not limited to, the ultimate supervision of all correctional officers under his command to ensure they are carrying out their duties and responsibilities.

50. On and around January 7, 2019, Defendant, SHERIFF DART, was then and there guilty of the following:

    a. Fostering an atmosphere at the Cook County Department of Corrections where correctional employees are encouraged to disregard maintenance of the jail facilities required to allow for the minimal civilized measure of life's necessities;

    b. Knowingly failing to ensure that detainees were not exposed to a serious health risk that could lead to injury, significant pain or discomfort;

10

c. Failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees in need of emergent medical needs;

d. Understaffing the jail, thus making it more likely that detainees would be exposed to unsafe and inhumane conditions of confinement;

e. Failing to promulgate and implement proper procedures that would ensure detainees were not exposed to health and injury hazards;

f. Failing to have adequate maintenance inspection of the detainment facilities;

g. Failing to have adequately staffed maintenance personnel;

h. Employing, both directly and by contract, unqualified, poorly trained, unmotivated, and/or incompetent personnel to handle the maintenance of the detainment facilities;

i. Having insufficient detainee supervision;

j. Otherwise acting willfully and wantonly in ignoring the maintenance requirements to provide LEWIS LOVE the basic necessities of life during his detainment.

51. As a correctional lieutenant assigned to the post of Lieutenant, LIEUTENANT WIGGINS' duties and responsibilities included, but were not limited to, "prepar[ing] all sworn members' assignments and activities according to operational requirements and needs," "directly supervis[ing] sergeants and secondary supervis[ing] of sworn members under his/her command to ensure they are carrying out their duties and responsibilities," and "implement[ing] corrective action upon finding performance deficiencies or violations of policies and procedures by sergeants and others under their command."

52. On and around January 7, 2019, Defendant, LIEUTENANT WIGGINS was then and there guilty of the following:

a. Fostering an atmosphere at the Cook County Department of Corrections where correctional employees are encouraged to disregard maintenance of the jail facilities required to allow for the minimal civilized measure of life's necessities;

11

b.   Knowingly failing to ensure that detainees were not exposed to a serious health risk that could lead to injury, significant pain or discomfort;

c.   Failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees in need of emergent medical needs;

d.   Understaffing the jail, thus making it more likely that detainees would be exposed to unsafe and inhumane conditions of confinement;

e.   Failing to promulgate and implement proper procedures that would ensure detainees were not exposed to health and injury hazards;

f.   Failing to have adequate maintenance inspection of the detainment facilities;

g.   Failing to have adequately staffed maintenance personnel;

h.   Employing, both directly and by contract, unqualified, poorly trained, unmotivated, and/or incompetent personnel to handle the maintenance of the detainment facilities;

i.   Having insufficient detainee supervision;

j.   Otherwise acting willfully and wantonly in ignoring the maintenance requirements to provide LEWIS LOVE the basic necessities of life during his detainment.

53.    As a correctional lieutenant assigned to the post of Lieutenant, LIEUTENANT SEVENING's duties and responsibilities included, but were not limited to, "prepar[ing] all sworn members' assignments and activities according to operational requirements and needs," "directly supervis[ing] sergeants and secondary supervis[ing] of sworn members under his/her command to ensure they are carrying out their duties and responsibilities," and "implement[ing] corrective action upon finding performance deficiencies or violations of policies and procedures by sergeants and others under their command."

54.    On and around January 7, 2019, Defendant, LIEUTENANT SEVENING, was then and there guilty of the following:

a.   Fostering an atmosphere at the Cook County Department of Corrections where correctional employees are encouraged to disregard maintenance of

12

the jail facilities required to allow for the minimal civilized measure of life's necessities;

b.  Knowingly failing to ensure that detainees were not exposed to a serious health risk that could lead to injury, significant pain or discomfort;

c.  Failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees in need of emergent medical needs;

d.  Understaffing the jail, thus making it more likely that detainees would be exposed to unsafe and inhumane conditions of confinement;

e.  Failing to promulgate and implement proper procedures that would ensure detainees were not exposed to health and injury hazards;

f.  Failing to have adequate maintenance inspection of the detainment facilities;

g.  Failing to have adequately staffed maintenance personnel;

h.  Employing, both directly and by contract, unqualified, poorly trained, unmotivated, and/or incompetent personnel to handle the maintenance of the detainment facilities;

i.  Having insufficient detainee supervision;

j.  Otherwise acting willfully and wantonly in ignoring the maintenance requirements to provide LEWIS LOVE the basic necessities of life during his detainment.

55.  As a correctional sergeant assigned to the post of Sergeant, SERGEANT BERRY's duties and responsibilities included, but were not limited to, "conduct[ing] at least two physical tours of assigned living units per shift while communicating with sworn members and inmates," and "directly supervis[ing] sworn members under his/her command to ensure they are carrying out their duties and responsibilities."

56.  On and around January 7, 2019, Defendant, SERGEANT BERRY was then and there guilty of the following:

a.  Fostering an atmosphere at the Cook County Department of Corrections where correctional employees are encouraged to disregard maintenance of

13

the jail facilities required to allow for the minimal civilized measure of life's necessities;

b. Knowingly failing to ensure that detainees were not exposed to a serious health risk that could lead to injury, significant pain or discomfort;

c. Failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees in need of emergent medical needs;

d. Understaffing the jail, thus making it more likely that detainees would be exposed to unsafe and inhumane conditions of confinement;

e. Failing to promulgate and implement proper procedures that would ensure detainees were not exposed to health and injury hazards;

f. Failing to have adequate maintenance inspection of the detainment facilities;

g. Failing to have adequately staffed maintenance personnel;

h. Employing, both directly and by contract, unqualified, poorly trained, unmotivated, and/or incompetent personnel to handle the maintenance of the detainment facilities;

i. Having insufficient detainee supervision;

j. Otherwise acting willfully and wantonly in ignoring the maintenance requirements to provide LEWIS LOVE the basic necessities of life during his detainment.

57.  As a correctional sergeant assigned to the post of Sergeant, SERGEANT ZAREMBA's duties and responsibilities included, but were not limited to, "conduct[ing] at least two physical tours of assigned living units per shift while communicating with sworn members and inmates," and "directly supervis[ing] sworn members under his/her command to ensure they are carrying out their duties and responsibilities."

58.  On and around January 7, 2019, Defendant, SERGEANT ZAREMBA, was then and there guilty of the following:

a. Fostering an atmosphere at the Cook County Department of Corrections where correctional employees are encouraged to disregard maintenance of

14

the jail facilities required to allow for the minimal civilized measure of life's necessities;

b.  Knowingly failing to ensure that detainees were not exposed to a serious health risk that could lead to injury, significant pain or discomfort;

c.  Failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees in need of emergent medical needs;

d.  Understaffing the jail, thus making it more likely that detainees would be exposed to unsafe and inhumane conditions of confinement;

e.  Failing to promulgate and implement proper procedures that would ensure detainees were not exposed to health and injury hazards;

f.  Failing to have adequate maintenance inspection of the detainment facilities;

g.  Failing to have adequately staffed maintenance personnel;

h.  Employing, both directly and by contract, unqualified, poorly trained, unmotivated, and/or incompetent personnel to handle the maintenance of the detainment facilities;

i.  Having insufficient detainee supervision;

j.  Otherwise acting willfully and wantonly in ignoring the maintenance requirements to provide LEWIS LOVE the basic necessities of life during his detainment.

59.  As a correctional officer assigned to the post of Living Unit Officer, OFFICER M. PERRY's duties and responsibilities included, but were not limited to, "inspect[ing] the overall condition and appearance of the living unit and report any deficiencies to the immediate on-duty supervisor."

60.  On or around January 7, 2019, Defendant, OFFICER M. PERRY, was then and there guilty of the following:

a.  Failing to make proper inspection of the overall condition and appearance of the living unit, including the shower facilities, to ensure no unsafe and/or hazardous conditions risked the health of the inmates, including Plaintiff;

15

b. Failing to report any deficiencies in the overall maintenance and sanitation condition of the living unit, including the shower facilities, that caused unsafe and/or hazardous conditions that risked the health of the inmates, including Plaintiff;

c. Knowingly failing to ensure that detainees were not exposed to a serious health risk that could lead to injury, significant pain or discomfort;

d. Failing to promulgate and implement proper procedures that would ensure detainees were not exposed to health and injury hazards;

e. Employing, both directly and by contract, unqualified, poorly trained, unmotivated, and/or incompetent personnel to handle the maintenance of the detainment facilities;

f. Having insufficient detainee supervision;

g. Otherwise acting willfully and wantonly in ignoring the maintenance requirements to provide LEWIS LOVE the basic necessities of life during his detainment.

61. As a correctional officer assigned to the post of Living Unit Officer, OFFICER J. ALANIS' duties and responsibilities included, but were not limited to, "inspect[ing] the overall condition and appearance of the living unit and report any deficiencies to the immediate on-duty supervisor."

62. On or around January 7, 2019, Defendant, OFFICER J. ALANIS, was then and there guilty of the following:

a. Failing to make proper inspection of the overall condition and appearance of the living unit, including the shower facilities, to ensure no unsafe and/or hazardous conditions risked the health of the inmates, including Plaintiff;

b. Failing to report any deficiencies in the overall maintenance and sanitation condition of the living unit, including the shower facilities, that caused unsafe and/or hazardous conditions that risked the health of the inmates, including Plaintiff;

c. Knowingly failing to ensure that detainees were not exposed to a serious health risk that could lead to injury, significant pain or discomfort;

d. Failing to promulgate and implement proper procedures that would ensure detainees were not exposed to health and injury hazards;

16

e. Employing, both directly and by contract, unqualified, poorly trained, unmotivated, and/or incompetent personnel to handle the maintenance of the detainment facilities;

f. Having insufficient detainee supervision;

g. Otherwise acting willfully and wantonly in ignoring the maintenance requirements to provide LEWIS LOVE the basic necessities of life during his detainment.

63. As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff was deprived of his rights, privileges, and immunities guaranteed to him by the Eighth and Fourteenth Amendments to the United States Constitution, namely, he was caused to suffer great pain and mental anguish.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against Defendants to Count I, and each of them, for compensatory damages, costs, attorney fees, and for all other legal and equitable remedies available under State and Federal Law.

**COUNT II**

**FAILURE TO PROVIDE MEDICAL ATTENTION / FAILURE TO PROTECT – Sheriff Thomas J. Dart, Cook County, Officer M. Perry – Cook County, Officer J. Alanis – Cook County, Gina J. Chung, PA-C, Daniel J. Kaczrowski, PA-C, Kim M. Anderson, R.N., Umeadi P. Imanlihen-Iyare, R.N., Linda Miller, R.N., Unknown (John Doe) Medical Staff Supervisors/ and/or Employees of Illinois River Correctional Center.**

64. Plaintiff restates and reincorporates Paragraphs 1–42 as Paragraph 64 of Count II of this Complaint.

65. Plaintiff had serious trauma and pain arising out of his fall while being detained inside the Cook County Jail, Division 8, Deck 3F, on January 7, 2019.

66. Defendants to Count II were deliberately indifferent to Plaintiff's serious medical need by not providing him with medical attention while he was detained at the Cook County Jail, and when he was incarcerated at Illinois River Correctional Center.

17

67. The actions, and inactions, of Defendants to Count II, described above, whereby said Defendants were aware of but deliberately, willfully, and wantonly ignored the obvious serious medical needs of Plaintiff, and the substantial risk of serious and worsening injury, and failed to take appropriate steps to protect him, constituted deliberate indifference to Plaintiff's medical needs, thus violating the Fourteenth Amendment of the Constitution.

68. Said Defendants' conduct contributed to Plaintiff's worsening medical condition.

69. The Constitution violations detailed above were caused by the customs, policies, and practices of Defendants to Count II, and the promulgation, enforcement, and dissemination of same.

70. As the Sheriff of Cook County and the chief officer of the COOK COUNTY DEPARTMENT OF CORRECTIONS, SHERIFF DART's duties and responsibilities included, but were not limited to, the ultimate supervision of all correctional officers under his command to ensure they are carrying out their duties and responsibilities.

71. On and around January 7, 2019, Defendant, SHERIFF DART, was then and there guilty of the following:

    a. Failing to properly maintain the common area in question so as to furnish to Plaintiff the access the basic necessities of life provided in the facilities he was detained within, free from hazards, which were recognized or should have been recognized by said Defendant, as causing or likely to cause serious physical harm to Plaintiff and others;

    b. Failing to inspect and/or maintain the restroom in the detainment facilities managed by said Defendant, the failure of which gave Plaintiff no safe means to move about the area he was detained within;

    c. Failing to inspect and maintain the restroom floor in the living unit managed by said Defendant wherein Plaintiff was caused to fall as a result of improper maintenance and/or cleaning of the facility and/or a lack thereof;

    d. Failing to maintain and/or inspect the living unit facilities managed by said Defendant so as to maintain it in good and safe condition for Plaintiff and others;

18

e.  Failing otherwise to comply with the applicable laws and regulations of the State of Illinois, and the applicable Federal laws and regulations; and,

f.  Were otherwise engaging in acts and/or omissions which were careless, negligent, and/or improper.

72.  As a correctional officer assigned to the post of Living Unit Officer, OFFICER M. PERRY's duties and responsibilities included, but were not limited to, "address[ing] any critical concerns regarding inmates' mental and medical health and promptly notif[y] the immediate on-duty supervisor."

73.  On or around January 7, 2019, Defendant, OFFICER M. PERRY, was then and there guilty of the following:

a.  Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional employees including medical personnel are encouraged to disregard serious medical needs of detainees;

b.  Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

c.  Failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees in need of emergent medical needs;

d.  Understaffing the jail, thus making it more likely that detainees' serious medical needs would go untreated;

e.  Failing to promulgate and implement proper procedures calculated to determine whether detainees were in emergent medical need;

f.  Failing to have adequate assessment of detainees' medical conditions by qualified medical staff, including physicians;

g.  Failing to have adequately staffed medical personnel;

h.  Employing, both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical care to inmates and detainees;

i.  Having insufficient detainee supervision;

j.  Failing to properly communicate between divisions of the Cook County Department of Corrections, including between Cermak Health Services and the jail;

19

k. Otherwise acting willfully and wantonly in ignoring the medical needs of LEWIS LOVE.

74. As a correctional officer assigned to the post of Living Unit Officer, OFFICER J. ALANIS' duties and responsibilities included, but were not limited to, "address[ing] any critical concerns regarding inmates' mental and medical health and promptly notif[y] the immediate on-duty supervisor."

75. On or around January 7, 2019, Defendant, OFFICER J. ALANIS, was then and there guilty of the following:

a. Failing to address the critical concerns regarding Plaintiff's medical health and promptly notify the immediate on-duty supervisor;

b. Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

c. Failing to promulgate and implement proper procedures calculated to determine whether detainees were in emergent medical need;

d. Failing to have adequate assessment of detainees' medical conditions by qualified medical staff, including physicians;

e. Having insufficient detainee supervision;

f. Otherwise acting willfully and wantonly in ignoring the medical needs of LEWIS LOVE.

76. As a certified physician assistant assigned to attend to the medical needs of Plaintiff and other inmates, GINA J. CHUNG, PA-C's duties and responsibilities included, but were not limited to, administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of Plaintiff.

77. In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, GINA J. CHUNG, PA-C, was then and there guilty of the following:

20

a.  Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

b.  Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional employees including medical personnel are encouraged to disregard serious medical needs of detainees;

c.  Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

d.  Failing to promulgate and implement proper procedures calculated to determine whether detainees were in emergent medical need;

e.  Failing to have adequate assessment of detainees' medical conditions by qualified medical staff, including physicians;

f.  Otherwise acting willfully and wantonly in ignoring the medical needs of LEWIS LOVE.

78.  As a certified physician assistant assigned to attend to the medical needs of Plaintiff and other inmates, DANIEL J. KACZROWSKI, PA-C's duties and responsibilities included, but were not limited to, administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of Plaintiff.

79.  In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, DANIEL J. KACZROWSKI, PA-C, was then and there guilty of the following:

a.  Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

b.  Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional employees including medical personnel are encouraged to disregard serious medical needs of detainees;

c.  Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

d.  Failing to promulgate and implement proper procedures calculated to determine whether detainees were in emergent medical need;

e.  Failing to have adequate assessment of detainees' medical conditions by qualified medical staff, including physicians;

21

      f.   Otherwise acting willfully and wantonly in ignoring the medical needs of LEWIS LOVE.

80.    As the managing nurse of the nursing staff at CERMAK HEALTH SERVICES OF COOK COUNTY, and as a registered nurse assigned to attend to the medical needs of Plaintiff and other inmates, KIM M. ANDERSON, R.N.'s duties and responsibilities included, but were not limited to, administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of Plaintiff, and referring Plaintiff to a qualified physician or physician assistant for treatment of his injuries.

81.    In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, KIM M. ANDERSON, R.N., was then and there guilty of the following:

      a.   Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

      b.   Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional employees including medical personnel are encouraged to disregard serious medical needs of detainees;

      c.   Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

      d.   Failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees in need of emergent medical needs;

      e.   Failing to promulgate and implement proper procedures calculated to determine whether detainees were in emergent medical need;

      f.   Failing to have adequate assessment of detainees' medical conditions by qualified medical staff, including physicians;

      g.   Failing to have adequately staffed medical personnel;

      h.   Employing, both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical care to inmates and detainees;

22

i. Failing to properly communicate between divisions of the Cook County Department of Corrections, including between Cermak Health Services and the jail;

j. Otherwise acting willfully and wantonly in ignoring the medical needs of LEWIS LOVE.

82. As a registered nurse assigned to attend to the medical needs of Plaintiff and other inmates, UMEADI P. IMANLIHEN-IYARE, R.N.'s duties and responsibilities included, but were not limited to, administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of Plaintiff, and referring Plaintiff to a qualified physician or physician assistant for treatment of his injuries.

83. In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, UMEADI P. IMANLIHEN-IYARE, R.N., was then and there guilty of the following:

a. Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

b. Failing to timely refer Plaintiff to a qualified physician or physician assistant for treatment of his injuries suffered as a result of his January 7, 2019 fall;

c. Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional employees including medical personnel are encouraged to disregard serious medical needs of detainees;

d. Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

e. Failing to promulgate and implement proper procedures calculated to determine whether detainees were in emergent medical need;

f. Failing to have adequate assessment of detainees' medical conditions by qualified medical staff, including physicians;

g. Otherwise acting willfully and wantonly in ignoring the medical needs of LEWIS LOVE.

84. As a registered nurse assigned to attend to the medical needs of Plaintiff and other inmates, LINDA MILLER, R.N.'s duties and responsibilities included, but were not limited to,

23

administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of Plaintiff, and referring Plaintiff to a qualified physician or physician assistant for treatment of his injuries.

85.     In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, LINDA MILLER, R.N., was then and there guilty of the following:

    a.  Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

    b.  Failing to timely refer Plaintiff to a qualified physician or physician assistant for treatment of his injuries suffered as a result of his January 7, 2019 fall;

    c.  Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional employees including medical personnel are encouraged to disregard serious medical needs of detainees;

    d.  Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

    e.  Failing to promulgate and implement proper procedures calculated to determine whether detainees were in emergent medical need;

    f.  Failing to have adequate assessment of detainees' medical conditions by qualified medical staff, including physicians;

    g.  Otherwise acting willfully and wantonly in ignoring the medical needs of LEWIS LOVE.

86.     As members of the medical staff assigned to attend to the medical needs of the prisoners at ILLINOIS RIVER CORRECTIONAL CENTER, UNKNOWN (John Doe) MEDICAL STAFF SUPERVISORS/ and/or EMPLOYEES of ILLINOIS RIVER CORRECTIONAL CENTER's duties and responsibilities included, but were not limited to, administering to and providing medical treatment for the injuries Plaintiff suffered as a result of his January 7, 2019 fall.

87.     In the aftermath of Plaintiff's January 7, 2019 fall, Defendants, UNKNOWN (John Doe) MEDICAL STAFF SUPERVISORS/ and/or EMPLOYEES of ILLINOIS RIVER CORRECTIONAL CENTER, were then and there guilty of the following:

24

a.  Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

b.  Fostering an atmosphere at the Illinois River Correctional Center where correctional employees including medical personnel are encouraged to disregard serious medical needs of detainees;

c.  Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

d.  Failing to train its employees to recognize and take proper action regarding the medical needs of prisoners, including training employees and medical personnel to identify those prisoners in need of emergent medical needs;

e.  Failing to promulgate and implement proper procedures calculated to determine whether prisoners were in emergent medical need;

f.  Failing to have adequate assessment of prisoners' medical conditions by qualified medical staff, including physicians;

g.  Failing to have adequately staffed medical personnel;

h.  Employing, both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical care to prisoners;

i.  Otherwise acting willfully and wantonly in ignoring the medical needs of LEWIS LOVE.

88.  As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff was deprived of his rights, privileges, and immunities guaranteed to him by the Eighth and Fourteenth Amendments to the United States Constitution, namely, he was caused to suffer great pain and mental anguish.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against Defendants to Count II, and each of them, for compensatory damages, costs, attorney fees, and for all other legal and equitable remedies available under State and Federal Law.

25

II.     **STATE LAW CLAIMS**

**COUNT III**

**NEGLIGENCE– Sheriff Thomas J. Dart, Cook County, Lieutenant Darnice K. Wiggins, Lieutenant Anthony J. Sevening, Sergeant Carl B. Berry, Sergeant Steven M. Zaremba, Officer M. Perry – Cook County, Officer J. Alanis – Cook County.**

89.     Plaintiff restates and reincorporates Paragraphs 1–42 as Paragraph 89 of Count III of this Complaint.

90.     At all relevant times, the living unit in Division 8, Deck 3F, of the Cook County Jail had one restroom facility.

91.     At all relevant times, the floor of the restroom in Division 8, Deck 3F, of the Cook County Jail, was wet, oily, and/or greasy, creating a health and safety hazard for Plaintiff and all individuals detained in said living unit.

92.     On January 7, 2019, Plaintiff was detained in Division 8, Deck 3F, of the Cook County Jail, and was in the exercise of due care and caution for his own safety.

93.     Defendants to Count III, knew, or should have known, that said restroom was wet, oily, and/or greasy, providing a health and safety hazard to Plaintiff and the other individuals detained in said living unit.

94.     It was reasonably foreseeable to said Defendants to Count III that detainees, specifically Plaintiff, would be required to access the restroom facilities while being detained in Division 8, Deck 3F of the Cook County Jail, and, as such, said Defendants owed a duty to keep said area reasonably safe.

95.     As the Sheriff of Cook County and the chief officer of the COOK COUNTY DEPARTMENT OF CORRECTIONS, SHERIFF DART's duties and responsibilities included, but were not limited to, the ultimate supervision of all correctional officers under his command to ensure they are carrying out their duties and responsibilities.

26

96. On and around January 7, 2019, Defendant, SHERIFF DART, was then and there guilty of the following:

    a. Failing to properly maintain the common area in question so as to furnish to Plaintiff the access the basic necessities of life provided in the facilities he was detained within, free from hazards, which were recognized or should have been recognized by said Defendant, as causing or likely to cause serious physical harm to Plaintiff and others;

    b. Failing to inspect and/or maintain the restroom in the detainment facilities managed by said Defendant, the failure of which gave Plaintiff no safe means to move about the area he was detained within;

    c. Failing to inspect and maintain the restroom floor in the living unit managed by said Defendant wherein Plaintiff was caused to fall as a result of improper maintenance and/or cleaning of the facility and/or a lack thereof;

    d. Failing to maintain and/or inspect the living unit facilities managed by said Defendant so as to maintain it in good and safe condition for Plaintiff and others;

    e. Failing otherwise to comply with the applicable laws and regulations of the State of Illinois, and the applicable Federal laws and regulations; and,

    f. Were otherwise engaging in acts and/or omissions which were careless, negligent, and/or improper.

97. As a correctional lieutenant assigned to the post of Lieutenant, LIEUTENANT WIGGINS' duties and responsibilities included, but were not limited to, "prepar[ing] all sworn members' assignments and activities according to operational requirements and needs," "directly supervis[ing] sergeants and secondary supervis[ing] of sworn members under his/her command to ensure they are carrying out their duties and responsibilities," and "implement[ing] corrective action upon finding performance deficiencies or violations of policies and procedures by sergeants and others under their command."

98. On and around January 7, 2019, Defendant, LIEUTENANT WIGGINS was then and there guilty of the following:

a. Failing to properly maintain the common area in question so as to furnish to Plaintiff the access the basic necessities of life provided in the facilities he was detained within, free from hazards, which were recognized or should have been recognized by said Defendant, as causing or likely to cause serious physical harm to Plaintiff and others;

b. Failing to inspect and/or maintain the restroom in the detainment facilities managed by said Defendant, the failure of which gave Plaintiff no safe means to move about the area he was detained within;

c. Failing to inspect and maintain the restroom floor in the living unit managed by said Defendant wherein Plaintiff was caused to fall as a result of improper maintenance and/or cleaning of the facility and/or a lack thereof;

d. Failing to maintain and/or inspect the living unit facilities managed by said Defendant so as to maintain it in good and safe condition for Plaintiff and others;

e. Failing otherwise to comply with the applicable laws and regulations of the State of Illinois, and the applicable Federal laws and regulations; and,

f. Were otherwise engaging in acts and/or omissions which were careless, negligent, and/or improper.

99. As a correctional lieutenant assigned to the post of Lieutenant, LIEUTENANT SEVENING's duties and responsibilities included, but were not limited to, "prepar[ing] all sworn members' assignments and activities according to operational requirements and needs," "directly supervis[ing] sergeants and secondary supervis[ing] of sworn members under his/her command to ensure they are carrying out their duties and responsibilities," and "implement[ing] corrective action upon finding performance deficiencies or violations of policies and procedures by sergeants and others under their command."

100. On and around January 7, 2019, Defendant, LIEUTENANT SEVENING, was then and there guilty of the following:

a. Failing to properly maintain the common area in question so as to furnish to Plaintiff the access the basic necessities of life provided in the facilities he was detained within, free from hazards, which were recognized or should have been recognized by said Defendant, as causing or likely to cause serious physical harm to Plaintiff and others;

28

b. Failing to inspect and/or maintain the restroom in the living unit facilities managed by said Defendant, the failure of which gave Plaintiff no safe means to move about the area he was detained within;

c. Failing to inspect and maintain the restroom floor in the living unit managed by said Defendant wherein Plaintiff was caused to fall as a result of improper maintenance and/or cleaning of the facility and/or a lack thereof;

d. Failing to maintain and/or inspect the living unit facilities managed by said Defendant so as to maintain it in good and safe condition for Plaintiff and others;

e. Failing otherwise to comply with the applicable laws and regulations of the State of Illinois, and the applicable Federal laws and regulations; and,

f. Were otherwise engaging in acts and/or omissions which were careless, negligent, and/or improper.

101.    As a correctional sergeant assigned to the post of Sergeant, SERGEANT BERRY's duties and responsibilities included, but were not limited to, "conduct[ing] at least two physical tours of assigned living units per shift while communicating with sworn members and inmates," and "directly supervis[ing] sworn members under his/her command to ensure they are carrying out their duties and responsibilities."

102.    On and around January 7, 2019, Defendant, SERGEANT BERRY was then and there guilty of the following:

a. Failing to properly maintain the common area in question so as to furnish to Plaintiff the access the basic necessities of life provided in the facilities he was detained within, free from hazards, which were recognized or should have been recognized by said Defendant, as causing or likely to cause serious physical harm to Plaintiff and others;

b. Failing to inspect and/or maintain the restroom in the detainment facilities managed by said Defendant, the failure of which gave Plaintiff no safe means to move about the area he was detained within;

c. Failing to inspect and maintain the restroom floor in the living unit managed by said Defendant wherein Plaintiff was caused to fall as a result of improper maintenance and/or cleaning of the facility and/or a lack thereof;

29

d. Failing to maintain and/or inspect the living unit facilities managed by said Defendant so as to maintain it in good and safe condition for Plaintiff and others;

e. Failing otherwise to comply with the applicable laws and regulations of the State of Illinois, and the applicable Federal laws and regulations; and,

f. Were otherwise engaging in acts and/or omissions which were careless, negligent, and/or improper.

103. As a correctional sergeant assigned to the post of Sergeant, SERGEANT ZAREMBA's duties and responsibilities included, but were not limited to, "conduct[ing] at least two physical tours of assigned living units per shift while communicating with sworn members and inmates," and "directly supervis[ing] sworn members under his/her command to ensure they are carrying out their duties and responsibilities."

104. On and around January 7, 2019, Defendant, SERGEANT ZAREMBA, was then and there guilty of the following:

a. Failing to properly maintain the common area in question so as to furnish to Plaintiff the access the basic necessities of life provided in the facilities he was detained within, free from hazards, which were recognized or should have been recognized by said Defendant, as causing or likely to cause serious physical harm to Plaintiff and others;

b. Failing to inspect and/or maintain the restroom in the detainment facilities managed by said Defendant, the failure of which gave Plaintiff no safe means to move about the area he was detained within;

c. Failing to inspect and maintain the restroom floor in the living unit managed by said Defendant wherein Plaintiff was caused to fall as a result of improper maintenance and/or cleaning of the facility and/or a lack thereof;

d. Failing to maintain and/or inspect the living unit facilities managed by said Defendant so as to maintain it in good and safe condition for Plaintiff and others;

e. Failing otherwise to comply with the applicable laws and regulations of the State of Illinois, and the applicable Federal laws and regulations; and,

f. Were otherwise engaging in acts and/or omissions which were careless, negligent, and/or improper.

105. As a correctional officer assigned to the post of Living Unit Officer, OFFICER M. PERRY's duties and responsibilities included, but were not limited to, "inspect[ing] the overall condition and appearance of the living unit and report any deficiencies to the immediate on-duty supervisor."

106. On or around January 7, 2019, Defendant, OFFICER M. PERRY, was then and there guilty of the following:

a. Failing to properly maintain the common area in question so as to furnish to Plaintiff the access the basic necessities of life provided in the facilities he was detained within, free from hazards, which were recognized or should have been recognized by said Defendant, as causing or likely to cause serious physical harm to Plaintiff and others;

b. Failing to inspect and/or maintain the restroom in the detainment facilities managed by said Defendant, the failure of which gave Plaintiff no safe means to move about the area he was detained within;

c. Failing to inspect and maintain the restroom floor in the living unit managed by said Defendant wherein Plaintiff was caused to fall as a result of improper maintenance and/or cleaning of the facility and/or a lack thereof;

d. Failing to maintain and/or inspect the living unit facilities managed by said Defendant so as to maintain it in good and safe condition for Plaintiff and others;

e. Failing otherwise to comply with the applicable laws and regulations of the State of Illinois, and the applicable Federal laws and regulations; and,

f. Were otherwise engaging in acts and/or omissions which were careless, negligent, and/or improper.

107. As a correctional officer assigned to the post of Living Unit Officer, OFFICER J. ALANIS' duties and responsibilities included, but were not limited to, "inspect[ing] the overall condition and appearance of the living unit and report any deficiencies to the immediate on-duty supervisor."

108. On or around January 7, 2019, Defendant, OFFICER J. ALANIS, was then and there guilty of the following:

31

a. Failing to properly maintain the common area in question so as to furnish to Plaintiff the access the basic necessities of life provided in the facilities he was detained within, free from hazards, which were recognized or should have been recognized by said Defendant, as causing or likely to cause serious physical harm to Plaintiff and others;

b. Failing to inspect and/or maintain the restroom in the detainment facilities managed by said Defendant, the failure of which gave Plaintiff no safe means to move about the area he was detained within;

c. Failing to inspect and maintain the restroom floor in the living unit managed by said Defendant wherein Plaintiff was caused to fall as a result of improper maintenance and/or cleaning of the facility and/or a lack thereof;

d. Failing to maintain and/or inspect the living unit facilities managed by said Defendant so as to maintain it in good and safe condition for Plaintiff and others;

e. Failing otherwise to comply with the applicable laws and regulations of the State of Illinois, and the applicable Federal laws and regulations; and,

f. Were otherwise engaging in acts and/or omissions which were careless, negligent, and/or improper.

109. As a direct and proximate result of one or more of the foregoing acts and/or omissions of the Defendants to Count III, Plaintiff, LEWIS LOVE, was caused to violently slip and fall down in the restroom of Division 8, Deck 3F, of the Cook County Jail on January 7, 2019, thereby suffering injuries internally and externally, both temporary and permanently; as a result of said injuries, LEWIS LOVE suffered and will continue to suffer great pain and mental anguish, has been and will be prevented from attending his normal affairs of life, and have been caused, and will be caused, to expend large sums of money for the treatment of said injuries.

WHEREFORE, the Plaintiff, LEWIS LOVE, prays that this Court enter judgment in his favor and against Defendants to Count III, and each of them, for compensatory damages, costs, attorney fees, and for all other legal and equitable remedies available under State and Federal Law.

32

### COUNT IV

**NEGLIGENCE– Sheriff Thomas J. Dart, Cook County, Officer M. Perry – Cook County, Officer J. Alanis – Cook County, Gina J. Chung, PA-C, Daniel J. Kaczrowski, PA-C, Kim M. Anderson, R.N., Umeadi P. Imanlihen-Iyare, R.N., Linda Miller, R.N., Unknown (John Doe) Medical Staff Supervisors/ and/or Employees of Illinois River Correctional Center.**

110.     Plaintiff restates and reincorporates Paragraphs 1–42 as Paragraph 110 of Count IV of this Complaint.

111.     At all relevant times, Defendants to Count IV were tasked with providing the necessary medical care to the detainees and inmates entrusted into their care.

112.     On January 7, 2019, and thereafter, Plaintiff was in the exercise of due care and caution for his own safety, and sought out medical attention from Defendants to Count IV through the procedures required of him.

113.     Defendants to Count IV, or any of them, knew, or should have known, that Plaintiff had suffered a serious fall on January 7, 2019, in the restroom of Division 8, Deck 3F, of the Cook County Jail, and complained of serious and constant pain and injuries.

114.     It was reasonably foreseeable to said Defendants to Count IV that Plaintiff had suffered significant injuries as a result of his fall, and required immediate medical attention, examination, and treatment, and as such, said Defendants owed a duty to provide Plaintiff said care.

115.     As the Sheriff of Cook County and the chief officer of the COOK COUNTY DEPARTMENT OF CORRECTIONS, SHERIFF DART's duties and responsibilities included, but were not limited to, the ultimate supervision of all correctional officers under his command to ensure they are carrying out their duties and responsibilities.

116.     On and around January 7, 2019, Defendant, SHERIFF DART, breached this duty by committing the following acts and/or omissions:

a. Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional officers, agents, representatives, and medical personnel are encouraged to disregard serious medical needs of detainees;

b. Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

c. Failing to make regular and timely checks of the living units;

d. Failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees with emergent medical needs;

e. Understaffing the jail, thus making it more likely that detainees' serious medical needs would go untreated;

f. Failing to promulgate and implement proper procedures calculated to determine whether detainees had emergent medical needs;

g. Failing to have adequate assessment of detainees' emergent medical needs by qualified medical staff, including physicians;

h. Failing to have adequately staffed medical personnel;

i. Encouraging the falsification and/or destruction of reports to cover up inadequacies in the care and treatment of pretrial detainees;

j. Employing, both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical care to inmates and detainees;

k. Allowed to exist or failed to correct the failures inherent in their policies, procedures, and personnel despite knowledge of past deprivation of necessary medical care in the Cook County Department of Corrections and the problems existing in their policies, procedures and personnel;

l. Having insufficient detainee supervision;

m. Failing to properly communicate between divisions of the Cook County Department of Corrections; including between Cermak Health Services and the jail;

n. Otherwise acting negligently, carelessly, and/or improperly in ignoring the medical needs of LEWIS LOVE.

34

117. As a correctional officer assigned to the post of Living Unit Officer, OFFICER M. PERRY's duties and responsibilities included, but were not limited to, "address[ing] any critical concerns regarding inmates' mental and medical health and promptly notif[y] the immediate on-duty supervisor."

118. On or around January 7, 2019, Defendant, OFFICER M. PERRY, breached this duty by committing the following acts and/or omissions:

a. Failing to address the critical concerns regarding Plaintiff's medical health and promptly notify the immediate on-duty supervisor;

b. Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

c. Failing to make regular and timely checks of the living units;

d. Failing to promulgate and implement proper procedures calculated to determine whether detainees had emergent medical needs;

e. Failing to have adequate assessment of detainees' emergent medical needs by qualified medical staff, including physicians;

f. Encouraging the falsification and/or destruction of reports to cover up inadequacies in the care and treatment of pretrial detainees;

g. Having insufficient detainee supervision;

h. Otherwise acting negligently, carelessly, and/or improperly in ignoring the medical needs of LEWIS LOVE.

119. As a correctional officer assigned to the post of Living Unit Officer, OFFICER J. ALANIS' duties and responsibilities included, but were not limited to, "address[ing] any critical concerns regarding inmates' mental and medical health and promptly notif[y] the immediate on-duty supervisor."

120. On or around January 7, 2019, Defendant, OFFICER J. ALANIS, breached this duty by committing the following acts and/or omissions:

35

a. Failing to address the critical concerns regarding Plaintiff's medical health and promptly notify the immediate on-duty supervisor;

b. Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

c. Failing to make regular and timely checks of the living units;

d. Failing to promulgate and implement proper procedures calculated to determine whether detainees had emergent medical needs;

e. Failing to have adequate assessment of detainees' emergent medical needs by qualified medical staff, including physicians;

f. Encouraging the falsification and/or destruction of reports to cover up inadequacies in the care and treatment of pretrial detainees;

g. Having insufficient detainee supervision;

h. Otherwise acting negligently, carelessly, and/or improperly in ignoring the medical needs of LEWIS LOVE.

121. As a certified physician assistant assigned to attend to the medical needs of Plaintiff and other inmates, GINA J. CHUNG, PA-C's duties and responsibilities included, but were not limited to, administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of Plaintiff.

122. In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, GINA J. CHUNG, PA-C, breached this duty by committing the following acts and/or omissions:

a. Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

b. Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional officers, agents, representatives, and medical personnel are encouraged to disregard serious medical needs of detainees;

c. Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

36

d.  Failing to promulgate and implement proper procedures calculated to determine whether detainees had emergent medical needs;

e.  Failing to have adequate assessment of detainees' emergent medical needs by qualified medical staff, including physicians;

f.  Encouraging the falsification and/or destruction of reports to cover up inadequacies in the care and treatment of pretrial detainees;

g.  Allowed to exist or failed to correct the failures inherent in their policies, procedures, and personnel despite knowledge of past deprivation of necessary medical care in the Cook County Department of Corrections and the problems existing in their policies, procedures and personnel;

h.  Failing to properly communicate between divisions of the Cook County Department of Corrections; including between Cermak Health Services and the jail;

i.  Otherwise acting negligently, carelessly, and/or improperly in ignoring the medical needs of LEWIS LOVE.

123.    As a certified physician assistant assigned to attend to the medical needs of Plaintiff and other inmates, DANIEL J. KACZROWSKI, PA-C's duties and responsibilities included, but were not limited to, administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of Plaintiff.

124.    In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, DANIEL J. KACZROWSKI, PA-C, breached this duty by committing the following acts and/or omissions:

a.  Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

b.  Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional officers, agents, representatives, and medical personnel are encouraged to disregard serious medical needs of detainees;

c.  Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

d. Failing to promulgate and implement proper procedures calculated to determine whether detainees had emergent medical needs;

e. Failing to have adequate assessment of detainees' emergent medical needs by qualified medical staff, including physicians;

f. Encouraging the falsification and/or destruction of reports to cover up inadequacies in the care and treatment of pretrial detainees;

g. Allowed to exist or failed to correct the failures inherent in their policies, procedures, and personnel despite knowledge of past deprivation of necessary medical care in the Cook County Department of Corrections and the problems existing in their policies, procedures and personnel;

h. Failing to properly communicate between divisions of the Cook County Department of Corrections; including between Cermak Health Services and the jail;

i. Otherwise acting negligently, carelessly, and/or improperly in ignoring the medical needs of LEWIS LOVE.

125. As the managing nurse of the nursing staff at CERMAK HEALTH SERVICES OF COOK COUNTY, and as a registered nurse assigned to attend to the medical needs of Plaintiff and other inmates, KIM M. ANDERSON, R.N.'s duties and responsibilities included, but were not limited to, administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of Plaintiff, and referring Plaintiff to a qualified physician or physician assistant for treatment of his injuries.

126. In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, KIM M. ANDERSON, R.N., breached this duty by committing the following acts and/or omissions:

a. Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

b. Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional officers, agents, representatives, and medical personnel are encouraged to disregard serious medical needs of detainees;

c. Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

d. Failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees with emergent medical needs;

e. Understaffing the jail, thus making it more likely that detainees' serious medical needs would go untreated;

f. Failing to promulgate and implement proper procedures calculated to determine whether detainees had emergent medical needs;

g. Failing to have adequate assessment of detainees' emergent medical needs by qualified medical staff, including physicians;

h. Failing to have adequately staffed medical personnel;

i. Encouraging the falsification and/or destruction of reports to cover up inadequacies in the care and treatment of pretrial detainees;

j. Employing, both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical care to inmates and detainees;

k. Allowed to exist or failed to correct the failures inherent in their policies, procedures, and personnel despite knowledge of past deprivation of necessary medical care in the Cook County Department of Corrections and the problems existing in their policies, procedures and personnel;

l. Failing to properly communicate between divisions of the Cook County Department of Corrections; including between Cermak Health Services and the jail;

m. Otherwise acting negligently, carelessly, and/or improperly in ignoring the medical needs of LEWIS LOVE.

127. As a registered nurse assigned to attend to the medical needs of Plaintiff and other inmates, UMEADI P. IMANLIHEN-IYARE, R.N.'s duties and responsibilities included, but were not limited to, administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of

39

Plaintiff, and referring Plaintiff to a qualified physician or physician assistant for treatment of his injuries.

128.    In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, UMEADI P. IMANLIHEN-IYARE, R.N., breached this duty by committing the following acts and/or omissions:

a.  Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

b.  Failing to timely refer Plaintiff to a qualified physician or physician assistant for treatment of his injuries suffered as a result of his January 7, 2019 fall;

c.  Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional officers, agents, representatives, and medical personnel are encouraged to disregard serious medical needs of detainees;

d.  Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

e.  Failing to promulgate and implement proper procedures calculated to determine whether detainees had emergent medical needs;

f.  Failing to have adequate assessment of detainees' emergent medical needs by qualified medical staff, including physicians;

g.  Encouraging the falsification and/or destruction of reports to cover up inadequacies in the care and treatment of pretrial detainees;

h.  Otherwise acting negligently, carelessly, and/or improperly in ignoring the medical needs of LEWIS LOVE.

129.    As a registered nurse assigned to attend to the medical needs of Plaintiff and other inmates, LINDA MILLER, R.N.'s duties and responsibilities included, but were not limited to, administering to and providing treatment for the medical health needs of the inmates at COOK COUNTY DEPARTMENT OF CORRECTIONS, including the medical health needs of Plaintiff, and referring Plaintiff to a qualified physician or physician assistant for treatment of his injuries.

130. In the aftermath of Plaintiff's January 7, 2019 fall, Defendant, LINDA MILLER, R.N., breached this duty by committing the following acts and/or omissions:

a. Failing to provide necessary medical care for the treatment of Plaintiff's injuries suffered as a result of his January 7, 2019 fall;

b. Failing to timely refer Plaintiff to a qualified physician or physician assistant for treatment of his injuries suffered as a result of his January 7, 2019 fall;

c. Fostering an atmosphere at the Cook County Department of Corrections and Cermak Health Services where correctional officers, agents, representatives, and medical personnel are encouraged to disregard serious medical needs of detainees;

d. Knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable timeframe;

e. Failing to promulgate and implement proper procedures calculated to determine whether detainees had emergent medical needs;

f. Failing to have adequate assessment of detainees' emergent medical needs by qualified medical staff, including physicians;

g. Encouraging the falsification and/or destruction of reports to cover up inadequacies in the care and treatment of pretrial detainees;

h. Otherwise acting negligently, carelessly, and/or improperly in ignoring the medical needs of LEWIS LOVE.

131. As members of the medical staff assigned to attend to the medical needs of the prisoners at ILLINOIS RIVER CORRECTIONAL CENTER, UNKNOWN (John Doe) MEDICAL STAFF SUPERVISORS/ and/or EMPLOYEES of ILLINOIS RIVER CORRECTIONAL CENTER's duties and responsibilities included, but were not limited to, administering to and providing medical treatment for the injuries Plaintiff suffered as a result of his January 7, 2019 fall.

132. In the aftermath of Plaintiff's January 7, 2019 fall, Defendants, UNKNOWN (John Doe) MEDICAL STAFF SUPERVISORS/ and/or EMPLOYEES of ILLINOIS RIVER

41

CORRECTIONAL CENTER, breached this duty by committing the following acts and/or omissions:

    a. Fostering an atmosphere at the Illinois River Correctional Center where correctional officers, agents, representatives, and medical personnel are encouraged to disregard serious medical needs of prisoners;

    b. Knowingly failing to ensure that serious emergent medical needs of prisoners could be treated in a reasonable timeframe;

    c. Failing to train its employees to recognize and take proper action regarding the medical needs of prisoners, including training employees and medical personnel to identify those prisoners with emergent medical needs;

    d. Understaffing the jail, thus making it more likely that prisoners' serious medical needs would go untreated;

    e. Failing to promulgate and implement proper procedures calculated to determine whether prisoners had emergent medical needs;

    f. Failing to have adequate assessment of prisoners' emergent medical needs by qualified medical staff, including physicians;

    g. Failing to have adequately staffed medical personnel;

    h. Encouraging the falsification and/or destruction of reports to cover up inadequacies in the care and treatment of prisoners;

    i. Employing, both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical care to prisoners;

    j. Allowed to exist or failed to correct the failures inherent in their policies, procedures, and personnel despite knowledge of past deprivation of necessary medical care in the Illinois River Correctional Center and the problems existing in their policies, procedures and personnel;

    k. Otherwise acting negligently, carelessly, and/or improperly in ignoring the medical needs of LEWIS LOVE.

133. As a direct and proximate result of one or more of the foregoing acts and/or omissions of the Defendants to Count IV, or any of them, the injuries suffered by Plaintiff, LEWIS LOVE, from a fall in the restroom of Division 8, Deck 3F, of the Cook County Jail on January 7, 2019, went

42

untreated, and progressively worsened due to the lack of medical attention; as a result of said lack of medical attention, LEWIS LOVE suffered and will continue to suffer great pain and mental anguish, have been and will be prevented from attending his normal affairs of life, and have been caused, and will be caused, to expend large sums of money for the treatment of said injuries.

WHEREFORE, the Plaintiff, LEWIS LOVE, prays that this Court enter judgment in his favor and against Defendants to Count IV, and each of them, for compensatory damages, costs, attorney fees, and for all other legal and equitable remedies available under State and Federal Law.

Respectfully submitted,

MULHERIN, REHFELDT & VARCHETTO, P.C.

By: /s/ *Patricia L. Argentati*
       Attorney for Plaintiff,
       LEWIS LOVE

Patricia L. Argentati (06181822)
James D. Mitchell (06330150)
Bridget A. Liccardi (06296666)
MULHERIN, REHFELDT & VARCHETTO, P.C.
211 S. Wheaton Avenue, Suite 200
Wheaton, IL 60187
(630) 653-9300
Fax: (630) 653-9316
pargentati@mrvlaw.com
jmitchell@mrvlaw.com
bliccardi@mrvlaw.com

43

## CERTIFICATE OF SERVICE

I, Patricia L. Argentati, hereby certify that, in accordance with Fed.R.Civ.P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF), Plaintiff's Fourth Amended Complaint was served pursuant to the District Court's ECF system on March 5, 2020.

/s/ *Patricia L. Argentati*
Patricia L. Argentati

44