IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEWIS LOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 2762 |
| v. ) | |
| ) | Judge John Z. Lee |
| THOMAS J. DART, COOK ) | |
| COUNTY, DARNICE K. ) | |
| WIGGINS, ANTHONY J. ) | |
| SEVENING, CARL B. BERRY, ) | |
| STEVEN M. ZAREMBA, ) | |
| M. PERRY, J. ALANIS, GINA J. ) | |
| CHUNG, DANIEL J. ) | |
| KACZROWSKI, KIM ) | |
| M. ANDERSON, UMEADI P. ) | |
| IMANLIHEN-IYARE, LINDA ) | |
| MILLER, KURT OSMUNDSON, ) | |
| BRITTANY MILLER, JASON ) | |
| ORKIES, and WEXFORD ) | |
| HEALTH SOURCES, ) | |
| INC., ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lewis Love was injured after slipping and falling in a restroom at Cook County Jail on January 7, 2019. To recover damages for his injuries, Love brings claims under 42 U.S.C. § 1983 and Illinois common law against Defendants Cook County, Wexford Health Sources ("Wexford"), and a number of their employees for failing to inspect the restroom where his injuries occurred and failing to provide him with adequate medical care. Cook County, Cook County Sheriff Thomas J. Dart, and the various County employees ("County Defendants") filed a motion to dismiss

the amended complaint, as did Wexford. County Defs.' Mot. Dismiss 6th Am. Compl. ("County Defs.' Mot."), ECF No. 122; Def. Wexford's Mot. Dismiss 6th Am. Compl. ("Wexford Mot."), ECF Nos. 127, 128. For the following reasons, Wexford's motion is granted, and the County Defendants' motion is granted in part and denied in part.

## I.  Background[1]

On the morning of January 7, 2019, Love, who was in pretrial custody on Deck 3F of Division 8 at Cook County Jail, went to the restroom on his floor to rinse out a cup and fill it with water. 6th Am. Compl. ¶¶ 25, 39, ECF No. 121. While inside, Love slipped on the restroom floor "due to wet, greasy, and/or oily floor conditions." *Id.* ¶ 40. According to Love, the slippery conditions were the result of detainees who regularly rinsed dirty dishes in the showers and disposed of food waste in the shower drains. *Id.*; *see id.* ¶¶ 30–31. Jail officials were required to assign detainees to clean the restroom floors on a regular basis, *id.* ¶ 32, but the policy was not enforced, and no one had cleaned the restroom in the days leading up to Love's fall. *Id.* ¶¶ 33–34.

When he fell, Love hit his head, back, elbows, and arms on the restroom floor and immediately experienced "loss of consciousness, confusion, forgetfulness, blurry vision, dizziness, a severely painful headache, and a large bump on his head." *Id.* ¶ 42; *see id.* ¶ 41. Love and another detainee informed the correctional officer on duty, Officer M. Perry, of his fall and resulting injuries and requested immediate medical treatment. *Id.* ¶ 43. Perry told Love to tell the on-duty nurse, Linda Miller, of his

---

[1]  The following well-pleaded factual allegations are accepted as true for purposes of the motions to dismiss. *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016).

injuries when Miller distributed medication later that morning. *Id.* ¶ 44. Other than that, Perry took no further action. *Id.*

Later that morning, Love informed Nurse Miller of his injuries and symptoms. *Id.* ¶ 45. Miller did not examine Love; instead, she simply replied "you're okay" and told him to lay down and submit a request for medical treatment, which Love did later that day. *Id.* ¶¶ 45–46. Love also informed the head nurse, Kim Anderson, of his injuries later that day, but she also refused to examine him and told him it would take "a few weeks" for him to see a physician. *Id.* ¶ 47.

By the next day, Love's pain had worsened, and he made another request for medical treatment to Perry and Sergeant Carl Berry, to no avail. *Id.* ¶¶ 48–49. Later that day, Love asked to see the on-duty nurse, Umeadi P. Imanlihen-Iyare. She prescribed Love some over-the-counter ("OTC") pain medication, but did not examine him. *Id.* ¶ 50.

Over the next two weeks, Love made numerous additional requests for medical treatment, all of which were denied. *Id.* ¶ 51. On January 23, a physician assistant, Gina Chung, examined Love, and continued his course of OTC pain medication. *Id.* ¶ 54. Three weeks later, on February 13, another physician assistant, Daniel Kaczrowski, examined Love and again continued him on OTC pain medication. *Id.* ¶ 55.

Love was transferred to the Illinois River Correctional Center ("IRCC") sometime later, where he continued to seek medical treatment from Wexford and its employees. There, Dr. Kurt Osmundson, nurse practitioner Brittany Miller, and

3

nurse Jason Orkies continued the same course of OTC pain medication that the Cook County medical staff had prescribed. *Id.* ¶ 58. They did not order any additional tests. *Id.* ¶¶ 58–59. Sometime later, Love was released from IRCC and sought medical care for his injuries and symptoms. *Id.* ¶ 60. Only then did he receive nerve treatments, and he eventually underwent neck surgery. *Id.*

Love filed a *pro se* complaint on April 24, 2019. The Court later appointed counsel for Love, and he filed five amended complaints from July 2019 to July 2020. *See* Order, *Love v. Dart*, No. 19 C 2762 (N.D. Ill. Mar. 8, 2021) ("3/8/21 Order"), ECF No. 120. The County Defendants, Wexford, and individual Wexford Defendants filed motions to dismiss Love's fifth amended complaint. *See* County and Cermak Defs.' Mot. Dismiss, ECF No. 80; Individual Wexford Defs.' Mot. Dismiss, ECF No. 99; Def. Wexford's Mot. Dismiss, ECF No. 100. The Court granted the motions as to all claims, except the § 1983 claim against Linda Miller in her personal capacity. *See* 3/8/21 Order at 25. In that order, the Court provided Love a final chance to amend his complaint, *see id.*, and Love filed his sixth amended complaint on April 6, 2021. *See generally* 6th Am. Compl. The County Defendants[2] and Wexford now seek to dismiss the claims asserted against them in the sixth amended complaint.[3] *See generally* County Defs.' Mot.; Wexford Mot.

---

[2] The County Defendants comprise Cook County; Dart; Perry; Berry; Chung; Kaczrowski; Anderson; Imanlilaen-Iyare; Linda Miller; Lieutenant Darnice Wiggins; Lieutenant Anthony Sevening; Sergeant Steven Zaremba; and Officer J. Alanis.

[3] The individual Wexford Defendants—Dr. Osmundson, Brittany Miller, and Orkies—did not file motions to dismiss the sixth amended complaint.

4

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

When considering a motion to dismiss, courts accept "all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

## III. Analysis

### A. Section 1983 Conditions of Confinement Claim (County Defendants)

Because Love's alleged injuries occurred while he was under pretrial detention, his conditions of confinement claim is governed by the Fourteenth Amendment.[4] *See*

---

[4] Love again pleads his conditions of confinement claim under the Eighth Amendment's deliberate indifference standard rather than the Fourteenth Amendment's objective reasonableness test. But as the Court noted in its previous order, the Fourteenth Amendment's objective test for pretrial conditions of confinement claims and the objective prong of the Eighth Amendment's deliberate indifference standard are substantially equivalent analyses; thus, this defect in pleading does not materially affect the Court's

5

3/8/21 Order at 7–8 (first citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015), and then citing *Hardeman v. Curran*, 933 F.3d 816, 824 (7th Cir. 2019)). Under the Fourteenth Amendment, Love must allege facts showing that the challenged condition of pretrial confinement was "objectively unreasonable." *Hardeman*, 933 F.3d at 824. This requires him to make an objective showing that the condition in question is "sufficiently serious" to offend the Constitution. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir.), *cert. denied*, 140 S. Ct. 50 (2019). Love's amended conditions of confinement claims do not meet the federal pleading standards.

Love's claim against the County Defendants rests on his contentions that the conditions of the restroom floor deprived Love of the "minimal civilized measure of life's necessities." 6th Am. Compl. ¶ 64. But the Seventh Circuit has held that "slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement." *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014); *see also id.* n.25 (collecting out-of-circuit cases); *Wilson v. Tuolumne Cnty.*, No. 1:19-cv-1132-BAM (PC), 2021 WL 1105359, at *5 (E.D. Cal. Mar. 23, 2021) (same). And Love's contentions that the County Defendants deliberately ignored the dirty restroom floor and that the jail had a "policy" of not regularly cleaning the bathroom floor are not sufficient to assert the "special and unique circumstances" necessary to justify an exception to this "general rule." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004); *see also, e.g.*, *Johnson v. Dart*, No. 15 C 1327, 2016 WL 1392324, at

---

inquiry, and the Court will consult Eighth Amendment case law to inform its consideration of Love's Fourteenth Amendment claim. *See* 3/8/21 Order at 8 n.3; *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999) ("Whether Henderson's present injury claim is analyzed under the Eighth or Fourteenth Amendment ultimately makes no practical difference.").

6

\*2 (N.D. Ill. Apr. 8, 2016) (a combination of slippery floors, poor lighting, and a lack of warning signs was sufficient to satisfy the objective prong of the Eighth Amendment conditions of confinement analysis).

In an effort to distinguish *Pyles*, Love argues that the presence of food waste on the restroom floor created a greater risk to his health and safety than did the wet floors in *Pyles*. *See Pyles*, 773 F.3d at 405. In support, he cites *Anderson v. Morrison*, 835 F.3d 681 (7th Cir. 2016), where the Seventh Circuit held that an inmate who was ordered to walk handcuffed down a flight of stairs that was "slippery with milk [and] clogged with several days' of accumulated food and rubbish," *id.* at 683, had "supplied the 'more'" necessary to overcome the presumption in *Pyles* that dirty floors do not create objectively unreasonable conditions. *Id.* at 682.

But *Anderson* is distinguishable based on three factors not present here: first, the stairs in *Anderson* were so obstructed with food that they resembled an "obstacle course"; second, the guards had handcuffed plaintiff behind his back so that he could not steady himself to avoid falling; and third, the guards provided plaintiff no assistance in navigating the obstructed stairwell. *Id.* at 683. By contrast, Love fell on a flat surface, was unrestrained when he fell, and he did not seek help upon entering the restroom. *Cf. id.* at 683 (distinguishing *Pyles* on grounds that "plummeting down a flight of 13 steps presents a far greater risk of physical injury than does slipping on a shower floor."). Thus, the general rule articulated in *Pyles* applies, and Count I is dismissed with prejudice.[5]

---

[5] Because Love has not shown the existence of an objectively unreasonable condition of pretrial detention, the Court need not consider Love's *Monell* claim against Cook County and

**B.     Section 1983 Failure to Provide Medical Attention Claim (County Defendants and Wexford)**

    **1.     Individual County Defendants**

Because Love was under pretrial detention, his § 1983 claim also arises under the Fourteenth Amendment, *see Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018), and "proceeds in two steps." *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018) (alteration in original) (quoting *Miranda*, 900 F.3d at 353). First, the Court must ask whether the medical defendants acted purposefully, knowingly, or recklessly when they considered the consequences of their handling of the plaintiff's injury; second, the Court asks whether the challenged conduct was objectively reasonable. *Id.* Furthermore, the Court must keep in mind that "[t]here is not one "proper" way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Consequently, a claim that a pretrial detainee received constitutionally inadequate medical care requires more than a showing of "negligence, medical malpractice, or disagreement with a prescribed course of treatment." *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016).

        **i.     Officer Perry**

Love's allegation that Officer Perry's failure to take any action following Love's slip-and-fall other than to tell Love to inform Linda Miller, the on-duty nurse, of his injuries does not come close to stating a claim for constitutionally inadequate medical

---

Sheriff Dart based on the jail's alleged "policy" or "custom" of not cleaning the restrooms. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

treatment. In fact, "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011).

Attempting to circumvent this general rule, Love asserts that Perry's referral to the jail's medical staff was objectively unreasonable because Perry knew that Linda Miller would not be able to see Love until "hours later." Pl.'s Resp. County Defs.' Mot. Dismiss ("Pl.'s Resp.") ¶ 18, ECF No. 139. Delays in treatment can, of course, comprise constitutional violations, but typically a longer interval of time or greater degree of injury is required. *Compare, e.g.*, *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (plaintiff stated Eighth Amendment claim where, the night after major shoulder surgery, his nurse forced him to take pain medication off-schedule despite warning from doctors that this would result in "extreme pain"), *with, e.g.*, *Alvarado v. Battaglia*, 539 F. Supp. 2d 1022, 1027 (N.D. Ill. 2008) (no constitutional claim stated where officer refused medical attention for two-and-a-half hours after plaintiff fell, cut his lip, and injured his knee). Refusing to immediately call a doctor when an inmate complains of pain following a fall, so that the inmate must wait a few hours for treatment, does not suffice to state a claim under the Fourteenth Amendment for inadequate medical attention against a non-medical defendant. *See Arnett*, 658 F.3d at 755; *Alvarado*, 539 F. Supp. 2d at 1028 ("Failing to call a doctor when a prisoner suffers minor scrapes and bruises does not constitute deliberate indifference." (quoting *Zentmyer v. Kendall Cnty.*, 220 F.3d 805, 810 (7th Cir.2000))). Nor does Perry's refusal of Love's request for medical treatment the following day

9

constitute objectively unreasonable conduct, given that it was reasonable for Perry to assume that Love had already seen Linda Miller and Anderson about his injuries. *See Arnett*, 658 F.3d at 756. Love's § 1983 failure to provide medical attention claim against Perry is therefore dismissed.

### ii. Nurses Imanlihen-Iyare, Linda Miller, and Anderson

Love next alleges that he received constitutionally inadequate treatment from three nurses at the jail. Love's allegation that Imanlihen-Iyare failed to administer a concussion test or refer him to a physician after he told her of his injuries does not state a claim. 6th Am. Compl. ¶¶ 100–101. Imanlihen-Iyare evaluated Love's injuries and made a judgment that he did not need to see a doctor right away. On these facts, her decision was not "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). Love's claim against Imanlihen-Iyare is dismissed.

As for Linda Miller, Love alleges that she abjectly failed even to examine him when he complained to them of his injuries. Love states that, when he approached Miller about his injuries a few hours after the accident, Linda Miller simply told him "you're okay" and told him to lay down, without "examining him in any manner." 6th Am. Compl. ¶ 45. This was despite the fact that Love had told her that he was experiencing concussion-like symptoms and was in significant pain. Taking these allegations as true, Love has pleaded sufficient facts that Linda Miller's failure to

treat him was objectively unreasonable. *See Perez v. Fenoglio*, 792 F.3d 768, 779–80 (7th Cir. 2015) (holding that plaintiff stated a deliberate indifference claim against a nurse who completely failed to treat plaintiff's hand injury despite plaintiff describing it in detail).

Love's claim against Anderson survives for similar reasons. According to Love, he informed Anderson of experiencing head and neck pain, but she refused to examine him. A nurse cannot simply ignore such "obvious risks to an inmate's health" without conducting an examination. *Perez*, 792 F.3d at 779 (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683 (7th Cir. 2012)); *see id.* at 779–80 (although nurse made an appointment for plaintiff to see a doctor the day after his injury, her alleged failure to examine or treat plaintiff's hand injury herself violated her "independent duty to ensure that inmates receive constitutionally adequate care," *id.* at 779). Taken as true, Love's allegations show that Anderson "failed to exercise medical judgment at all," *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 660 (7th Cir. 2021), so Love states a claim for inadequate medical attention against her.

In response, the County Defendants assert that Love "received medical attention on multiple occasions." County Defs' Mot. at 11; *see also* County Defs.' Reply Supp. Mot. Dismiss, ECF No. 145, at 5–6. But individual corrections officials cannot dodge liability for failure to provide constitutionally adequate medical care simply by alleging that the plaintiff received *some* medical care at *some* point from *someone*. Each person is accountable for their actions. *See Thomas v. Pfister*, __ F. Supp. 3d __, 2021 WL 3737711, at *3 (N.D. Ill. Aug. 24, 2021) (citing *Petties v. Carter*, 836 F.3d

722, 727–28 (7th Cir. 2016)); *see also Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010).

Defendants also contend that the fact that Love was examined the following day is fatal to his claim. But a delay in treatment can state an inadequate medical treatment claim if the delay worsens an inmate's injury. *See Thomas v. Martija*, 991 F.3d 763, 769 (7th Cir. 2021) (holding that delayed treatment of an injury can constitute deliberate indifference if it "exacerbate[s]" the injury or "unnecessarily prolong[s] pain"); *Perez*, 792 F.3d at 781. And whether the one-day delay adversely impacted Love's condition is a factual inquiry unsuitable for resolution on the pleadings. Defendants' motion to dismiss the § 1983 failure to provide medical claims against Linda Miller and Anderson is therefore denied.

### iii. Physician Assistants Chung and Kaczrowski

Love next argues that the jail's physician assistants, Chung and Kaczrowski, violated his constitutional rights by continuing him on the OTC pain medication regimen recommended by Imanlihen-Iyare. To be sure, a medical provider in a correctional setting can violate the Eighth or Fourteenth Amendment by continuing a course of treatment that is obviously ineffective. *See Machicote*, 969 F.3d at 828. But Love pleads no facts suggesting that Chung or Kaczrowski were "subjectively aware that the treatment plan was ineffective," *Thomas*, 991 F.3d at 763; *see also Machicote*, 969 F.3d at 828 ("Persisting in a course of treatment *known to be ineffective* may support an inference that a medical official recklessly ignored an inmate's serious medical condition." (emphasis added)). To the contrary, Love seems

12

to express, at most, a subjective belief that his treatment did not work. This is not enough to support a claim for failure to provide medical attention. *See McDonald*, 821 F.3d at 888. Defendants' motion to dismiss the § 1983 failure to provide medical attention claims as to Chung and Kaczrowski is granted.

### 2. Cook County—*Monell* claim

Finally, Love asserts a *Monell* claim against Cook County. *Monell* liability attaches to a unit of local government, such as Cook County, if "execution of [the] government's policy or custom, . . . inflicts the injury." 436 U.S. at 694. There are three grounds of municipal liability under *Monell*: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)), *cert. denied sub nom. First Midwest Bank v. City of Chi.*, __ S. Ct. __, 2021 WL 4733651 (mem.) (Oct. 12, 2021). In order to state a *Monell* claim, the plaintiff must first show actual deprivation of a constitutional right, and then must demonstrate that the policy or custom at issue caused the deprivation. *Id.* at 987.

Here, Love alleges that the County maintained a policy of refusing to send detainees to a physician for immediate medical attention unless the detainee was the victim of a stabbing, and that "for all other injuries, regardless of severity," detainees were forced to wait for "at least a week and . . . up to and over a month" in order to

13

see a doctor. 6th Am. Compl. ¶¶ 37–38. But Love has not shown that the alleged policy caused Linda Miller and Anderson's purported constitutional violations. *See LaPorta*, 988 F.3d at 987 (*Monell* embraces a "rigorous causation standard" requiring "a 'direct causal link' between the challenged municipal action and the violation of [the plaintiff's] constitutional rights." (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997))). Nor could he—accepting that such a policy existed, it only affected detainees' ability "to be seen by a *physician* for immediate medical care." 6th Am. Compl. ¶ 37 (emphasis added). Accordingly, it could not have been the reason that Linda Miller or Anderson completely failed to examine him, and Love's *Monell* claim against Cook County is dismissed.

### 3. Wexford

Love also brings a § 1983 claim against Wexford. But Love's *Monell* claim against Wexford fails at the outset because he does not identify any specific Wexford policy, practice, or custom that could have caused any violation of his constitutional rights. The complaint contains only "conclusory statements," *Iqbal*, 556 U.S. at 678, about Wexford and recitations of the *Monell* doctrine's legal elements, which are insufficient to state a *Monell* claim. *See, e.g.*, 6th Am. Compl. ¶ 112(d) (claiming that Wexford "fostered an atmosphere" that led to Love's medical needs being ignored); *id.* ¶ 112(f) (reciting the elements of a failure to train claim); *see also Iqbal*, 556 U.S. at 681. Love's § 1983 claim against Wexford is dismissed.

In sum, Defendants' motions to dismiss Count II are granted as to all claims except the § 1983 failure to provide medical attention claims against Linda Miller

and Anderson in their personal capacities.

## C. Negligence Claims (County Defendants)

Love also brings negligence claims under Illinois law. As to the County Defendants, he first claims that they were negligent in failing to inspect and maintain the conditions of the restroom at the jail. He also claims that Cook County and Dart failed to supervise the maintenance of the restroom to remove hazardous conditions such as food waste, oil, or other substances. Finally, Love asserts that various County Defendants failed to exercise reasonable care in providing him with adequate medical treatment.

In response, the County Defendants argue that Love's negligence claims are barred by the Illinois Local Government and Government Employee Tort Immunity Act ("ITIA"), 745 Ill. Comp. Stat. 10/1-101 *et seq*.[6] Love does not contest that the County Defendants are covered by the ITIA, so the Court turns directly to Defendants' arguments.

---

[6] The County Defendants also ask the Court to relinquish supplemental jurisdiction over the state law claims. But Love's negligence claims and the two surviving federal claims "derive from a common nucleus of operative fact." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see, e.g.*, *Frazier v. Wexford Health Sources, Inc.*, No. 3:19-cv-50121, 2021 WL 1165094, at *6 (N.D. Ill. Mar. 26, 2021) (retaining supplemental jurisdiction over medical malpractice claim based on surviving Eighth Amendment claim because the claims comprised "two pieces of the same story" and shared a "loose factual connection" (quoting *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008))). Thus, the Court finds that supplemental jurisdiction is proper.

### 1. Individual County Defendants[7]

The Individual County Defendants argue that the ITIA's statute of limitations, which provides "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued," bars Love's claims against them. *Id.* § 10/8-101(a). The County Defendants point out that Love's cause of action accrued in January 2019, and he did not name any of the individual County Defendants until he filed his fourth amended complaint on March 5, 2020, more than a year later. Love retorts that his naming of the current group of County Defendants in the fourth amended complaint should relate back to July 11, 2019, the date he filed his first amended complaint.

Under Federal Rule of Civil Procedure 15(c), relation back is proper when "the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c). But the Seventh Circuit recently reaffirmed that a plaintiff's failure to identify individual defendants within the limitations period is not a Rule 15 "mistake." *See Herrera v. Cleveland*, 8 F.4th 493, 498–99 (7th Cir. 2021). *Herrera* involved a plaintiff who, like Love, "sued John Doe defendants fully aware that he lacked adequate information to ascertain the correctional officers' identities." *Id.* at 498. The Seventh Circuit held that the fact that the plaintiff lacked information

---

[7] The Individual County Defendants comprise Officers J. Alanis and Perry; Sergeants Berry and Steven Zaremba; Physician Assistants Chung and Kaczrowski; Nurses Anderson, Imanlihen-Iyare, and Linda Miller; and Lieutenants Darnice Wiggins and Anthony Sevening.

16

about the unknown defendants' identities meant that did he not make a "mistake" within the meaning of Rule 15. *See id.* at 498–99. Love's failure to identify the individual County Defendants until after the ITIA's limitations period expired was similarly a result of his lack of information about them, not a "mistake" as to their identities. *See id.* Accordingly, relation back is improper, and the ITIA's one-year statute of limitations bars his negligence claims against the individual County Defendants. Love's negligence claims against Alanis; Perry; Berry; Zaremba; Chung; Kaczrowski; Anderson; Imanlihen-Iyare; Linda Miller; Wiggins; and Sevening are dismissed.

### 2. Cook County and Sheriff Dart

That leaves Cook County and Sheriff Dart. The County Defendants urge that Cook County and Sheriff Dart are immune under the ITIA because their alleged failure to supervise does not constitute "willful and wanton" conduct. But the Court need not reach this question, because ITIA provides absolute immunity (that is, irrespective of whether the conduct was willful or wanton) to any "local public entity []or . . . public employee for . . . failure to provide sufficient equipment, personnel, supervision or facilities" for a "jail, detention or correctional facility." 745 Ill. Comp. Stat. 10/4-103. And "[t]he [Illinois] legislature did not intend there to be an exception for willful and wanton misconduct in section 4-103, and none may be judicially created." *Bradford v. City of Chi.*, No. 16 CV 1663, 2021 WL 1208958, at *9 (N.D. Ill. Mar. 31, 2021) (quoting *Jefferson v. Sheahan*, 664 N.E.2d 212, 217 (Ill. App. Ct. 1996)); *see also Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998)

17

(same). All of Love's negligence allegations against Cook County and Dart fall within the scope of § 10/4-103 because they allege that Cook County and Dart failed to properly supervise the jail. *See, e.g.*, 6th Am. Compl. ¶ 122(c) (alleging Sheriff Dart "[f]ailed to inspect and maintain the restroom floor in [Love's] living unit"). Accordingly, the negligence claims are also dismissed as to Cook County and Dart.

### D. Negligence Claim (Wexford)

Finally, Love asserts a negligent medical attention claim against Wexford. Because Love's negligence claim against Wexford is predicated on Wexford's *respondeat superior* liability for the alleged torts of its employees—Dr. Osmundson, Brittany Miller, and Orkies—the claim against Wexford depends on whether Love states a negligence claim against those employees. Again, Love falls short here. His allegations against Dr. Osmundson, Brittany Miller, and Orkies comprise, in their entirety, two paragraphs of factual allegations, *see* 6th Am. Compl. ¶¶ 58–59 (alleging that the individual Wexford Defendants "continued to ignore Plaintiff's complaints of pain and continued the same medical treatment plan instituted at Cook County," *id.* ¶ 58, and failed to "test[] [Love] for a concussion" or to "assess[] for his neck or back complaints." *Id.* ¶ 59), along with a litany of "bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of Love's negligence claims. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555); *see, e.g.*, 6th Am. Compl. ¶¶ 106, 108, 110. Because none of these conclusory allegations against the individual Wexford defendants state a claim, Wexford cannot be liable under a

18

*respondeat superior* theory, and its motion to dismiss the negligence claim against it is granted.

## IV. Conclusion

For the foregoing reasons, the Court grants Wexford's motion to dismiss in its entirety, and grants the County Defendants' motion in all respects except the § 1983 failure to provide medical attention claims against Linda Miller and Anderson.

**IT IS SO ORDERED.**  ENTERED: 3/16/22

_____
**John Z. Lee**
**United States District Judge**