IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lewis Love | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19 C 2762 |
| | ) |
| Sheriff of Cook County Thomas Dart, *in his official capacity*, et al. | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Plaintiff Lewis Love was in pre-trial custody at Cook County Jail on January 7th, 2019, when he slipped and fell on the floor of the jail's bathroom, which he alleges was greasy due to inadequate cleaning and maintenance. He claims to have injured his back, head, and elbows in the fall, and he filed this action to recover from two entities--Cook County and Wexford Health Sources, Inc., a private entity that provides healthcare services to individuals in Illinois state custody--and several of their individual employees,[1] claiming that they failed adequately to

---

[1] The individual County defendants named in the operative complaint are J. Alanis, M. Perry, Carl B. Berry, Steven M. Zaremba, Gina J. Chung, Daniel J. Kaczrowski, Umeadi P. Imanlihen-Iyare, Kim M. Anderson, Linda Miller, Darnice Wiggins, and Anthony Sevening. The individual Wexford employees, who did not move to dismiss the operative complaint, are Osmundson, Brittany Miller, and Orkies.

treat his injuries in the days, weeks, and months that followed his fall.

Judge Lee, before whom this case was previously pending, determined that Mr. Love's claims against Cook County and Wexford were incurably defective, and he dismissed them without leave to replead.[2] *Love v. Dart*, No. 19 C 2762, 2022 WL 797051, at *6 (N.D. Ill. Mar. 16, 2022). Judge Lee similarly dismissed most of Mr. Love's individual claims against the County's employees, leaving only his claims for failure to provide medical attention under § 1983 against nurse Kim Anderson and nurse Linda Miller. *See id.* at *3-*5, *7-*8. Each of these defendants, as well as the individual defendants employed by Wexford—Dr. Kurt Osmundson and nurses Jason Orkies and Brittany Miller—who treated Mr. Love during his custody at the Illinois River Correctional Center ("IRCC") have filed motions for summary judgment on all claims asserted against them in the Sixth Amended Complaint. For the reasons below, their motions are granted.

I.

The following facts are undisputed unless otherwise noted. Mr. Love was in custody at the Cook County Jail from December 20,

---

[2] By that point, Judge Lee had afforded Mr. Love several opportunities to cure pleading deficiencies, and his order dismissing portions of Mr. Love's counseled, Fifth Amended Complaint stated that any sixth amended complaint would be his "final chance to file an amended complaint." ECF 120 at 25.

2

2019, until March 18, 2019, when he was transferred into the custody of the Illinois Department of Corrections ("IDOC"). He was then housed at IRCC from April to October of 2019. Prior to his custody at these facilities, Mr. Love had a history of back pain, and indeed, he had back surgery in 2014 to address chronic back pain after a work injury. Osmundson L.R. 56.1 Stmt., ECF 253 at ¶ 11.[3] He also had a history of migraines and sought medical treatment for headaches and neck pain on multiple occasions. *Id.* at ¶ 7. For example, medical records reviewed by defendants' expert reflect that in June of 2018, Mr. Love presented to the Community Hospital emergency department with neck pain and swelling to the back of the head, and that he returned in November of 2018 with a primary complaint of a headache and reported a history of migraines. Ackerman Rep., ECF 228-15 at 8. Additionally, Mr. Love suffered from diabetes, diabetic neuropathy, and ulnar neuropathy for which he was prescribed nerve painkillers gabapentin and Cymbalta. ECF 253 at ¶ 8.

On the date of his fall on January 7, 2019, Mr. Love saw nurses Anderson and Linda Miller (the latter of whom I refer to as "Nurse Linda" to differentiate her from defendant nurse Brittany

---

[3] Mr. Love objects to and purports to deny the Osmundson L.R. 56.1 Statements cited in this paragraph on the ground that they immaterial and based on hearsay. But the facts are supported by the record and are uncontroverted, and as I explain elsewhere in this decision, Mr. Love's objections are meritless.

Miller, a Wexford employee whose first name I also use for clarity). At his deposition, Mr. Love testified that he received Tylenol and was told to rest on his bunk. *See* Love Dep., ECF 228-1, at 31-35. This testimony is consistent with the notes Nurse Linda made in Mr. Love's chart, which she reviewed and testified about at her own deposition. According to these notes and testimony, Nurse Linda saw Mr. Love at 9:34 a.m. on the date of his fall, observed no visible signs of injury or distress, provided him pain medication, and told him to report to medical staff if new symptoms came about. Linda Dep., ECF 234-7 at 39-41.

Later the same day, Mr. Love complained of pain to Nurse Anderson, who told him that he would see the doctor. Love Dep., ECF 228-1, at 33. Mr. Love filed a grievance the following day, complaining that in the twelve hours since his fall, he had only been given "pain pills." ECF 234-4 at 7. He saw Nurses Linda and Anderson daily in the following days, who continued to give him Tylenol on top of the pain medication he was already receiving, but he believed his pain medication was "not strong enough" because his pain continued. Love Dep., ECF 228-1, at 48:14-16.

On January 23, 2019, Mr. Love saw physician's assistant Gina Chung[4] and reported intermittent headaches, lower back pain, and

---

[4] The Sixth Amended Complaint names Ms. Chung as a defendant in this case, but Mr. Love's claims against her were dismissed on March 16, 2022. *See* ECF 148.

4

neck pain. His neurological exam was normal, and PA Chung ordered a CT scan of his head, x-rays of his cervical (neck) and lumbar (lower) back, referred him to physical therapy, and prescribed him a muscle relaxant. ECF 253 at ¶ 11. The following day, Mr. Love underwent a CT scan of his head and x-rays of his spine. The CT scan showed a small contusion of the soft tissues overlying the occipital bone with no other acute intracranial process. The x-rays of his neck/cervical spine showed no definite abnormalities, and X-rays of his lumbar spine showed evidence of his previous surgery and otherwise demonstrated normal alignment. *Id*. at ¶ 12.

Mr. Love then saw medical providers at Cook County Jail on February 3, 13, and 14, 2019. At the first of these visits, which was with Gina Caputo, a mental health provider, he complained of neck pain, but at the second visit, he reported to physician's assistant Daniel Kaczrowski[5] that his occipital pain was resolving, that he was rarely experiencing headaches, and that he was "essentially back to baseline." ECF 253 at ¶¶ 13-14. At the third encounter, Mr. Love was evaluated for physical therapy for his lower back pain, which he reported had begun five years earlier. At that visit, his cervical and trunk mobility were found to be within functional limits, as were his range of motion in his

---

[5] The Sixth Amended Complaint names Mr. Kaczrowski as a defendant in this case, but Mr. Love's claims against him were dismissed on March 16, 2022. *See* ECF 148.

5

bilateral upper and lower extremities. He was further found to be neurologically intact, and no ongoing physical therapy was required as he was able to complete all exercises in his home exercise program without difficulty and could do so as needed. *See id.* at ¶ 15.

Mr. Love was transferred into IDOC custody on March 18, 2019. At his intake examination, he reported no seizures or cerebral trauma. His head, neck, face, scalp, upper extremities, spine, and musculoskeletal areas were all normal. *Id.* at ¶ 16. When he arrived at IRCC on April 3, 2019, his "Offender Health Status Transfer Summary" listed a number of chronic conditions including hypertension, diabetes, and asthma, as well as a current complaint of back pain. *Id.* at ¶ 18; ECF 218-11 (medical records), at 7. Records of subsequent visits to the IRCC health care unit in April and May of 2019 reflect complaints of chronic diarrhea, nausea and vomiting, skin problems, chest pain, neuropathic pain in his legs and feet, and upper-respiratory infection. *See* ECF 218-11 (medical records) at 9-39. None of these records mentions his fall on January 7, 2019.

Defendants' expert, neurosurgeon Paul Ackerman, reviewed Mr. Love's medical records from before, during, and after his incarceration; Mr. Love's complaint and deposition testimony; and selected discovery responses. Based on these materials and his professional training and experience in neurosurgery, Dr. Ackerman

6

opines that Mr. Love "likely sustained a concussion during his slip and fall of January 7, 2019," and that the medical records, taken as a whole, "indicate that all of the defendants in this case evaluated and treated Mr. Love appropriately for his concussion." Ackerman Rep., ECF 228-15 at 9. With respect to the care Mr. Love received in the aftermath of his fall, Dr. Ackerman stated, "Tylenol and rest are in fact the first line treatment of a mild concussion, both of which Plaintiff conceded were recommended" and administered. *Id*. at 6. Dr. Ackerman thus opined that Mr. Love "received timely and appropriate pharmacologic pain medication (i.e. acetaminophen and NSAID's) and obtained a CT scan of the head for his persistent headaches." *Id*. at 9.

As for the "sporadic headaches" Mr. Love complained about in the weeks and months following his fall, Dr. Ackerman opines that these "are more likely than not related either to intermittent migraines" such as those he suffered prior to his fall, or to his "poorly-controlled diabetes, smoking, alcohol intake, high blood pressure or chest pain," all of which were also observed prior to his incarceration. *Id*. Similarly, Dr. Ackerman opines that the ongoing vision problems that Mr. Love claims are residual to his fall are more likely related to his poorly-controlled diabetes, given evidence that Mr. Love was diagnosed with "[s]evere nonproliferative diabetic retinopathy of both eyes," for which he underwent surgery in 2021. *Id*. Based on this and other evidence in

7

his medical record, Dr. Ackerman concludes that Mr. Love "is not suffering from 'post-concussive syndrome.'" *Id*.

With respect to his claims of persistent neck problems resulting from his January 2019 fall, Dr. Ackerman opines that "Mr. Love sustained a cervical strain or whiplash injury during his fall on January 7, 2019," for which he was "appropriately treated...with pain medications (e.g. Tylenol and naproxen), muscle relaxants (methocarbamol), and referred for physical therapy." *Id*. at 10, 11. Dr. Ackerman observes that nothing in the record indicates that Mr. Love either complained of or exhibited objective signs of conditions that would have indicated "more aggressive radiographic investigation or treatment," in the accident's immediate aftermath, and that the cervical spine x-rays taken approximately two weeks later "confirmed that Mr. Love had not sustained an acute cervical fracture or dislocation as a result of his fall." Instead, the most remarkable radiographic finding was Mr. Love's "decidedly chronic" C5-6 disc space narrowing. *Id*. at 11. Indeed, Dr. Ackerman observes that Mr. Love's medical records reflect "radiographic evidence of significant, pre-existing, and previously symptomatic, C5-6 degenerative disc disease well before his incarceration," and that his condition had remained "grossly stable" between 2015 and 2020. *Id*. at 11-12. Based on the totality of the medical records he reviewed, Dr. Ackerman concludes that the anterior cervical surgery Mr. Love

8

underwent in February of 2020—which Mr. Love claims was necessitated by his fall at the Cook County Jail—were "the result of progressive cervical spondylosis (i.e. arthritis), a natural, chronic, degenerative process known to worsen with age." *Id*. at 10. In other words, Dr. Ackerman concluded that "the January 2019 fall in no way resulted in or accelerated the timeframe in which Mr. Love required C5-6 ACDF." *Id*. at 12.

Mr. Love did not disclose an expert, nor does he offer any evidence controverting Dr. Ackerman's opinions.

II.

Summary judgment is appropriate if there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). I view the evidence and draw all reasonable inferences in favor of Mr. Love, as the non-moving party. *Greeno v. Daley,* 414 F.3d 645, 652 (7th Cir. 2005). To survive summary judgment, Mr. Love must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019).

Because Mr. Love was detained at Cook County Jail before his trial and at IRCC after his conviction, his § 1983 claims arise under two different constitutional amendments requiring different analyses when it comes to defendants' mental state. *See Pittman by & through Hamilton v. Madison Cnty., Illinois*, 108 F.4th 561, 566,

9

570 (7th Cir. 2024) (explaining that while convicted prisoners, whose medical care claims proceed under the Eighth Amendment, must show deliberate indifference using a subjective standard, pretrial detainees "need not prove a defendant's subjective awareness of the risk of harm to prevail on a Fourteenth Amendment Due Process claim."), reh'g denied, No. 23-2301, 2024 WL 3889635 (7th Cir. Aug. 21, 2024). But nothing turns on this distinction here, because under either framework, a plaintiff seeking damages under § 1983 must establish causation. *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) ("In order to succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages."). Indeed, I need not decide whether any defendant acted with deliberate indifference because even assuming that any of them did, Mr. Love offers nothing to suggest that he was injured by any of their acts or omissions.

With respect to Nurses Anderson and Linda, Mr. Love argues that their putative failure to "document[] or treat[]" his concussion reflects deliberate indifference. But there is no indication that any failure to "document" Mr. Love's concussion affected the treatment he received: Tylenol and instructions to rest, which Dr. Ackerman opined without contradiction was the very treatment indicated for a concussion. Moreover, there is no evidence that these defendants' chosen course of treatment had any

10

adverse impact on Mr. Love's health, or that a different course of treatment would have yielded a better outcome. To the contrary, Mr. Love's records reflect that he reported an improvement in his concussive symptoms within a few weeks of his accident, which Dr. Ackerman opined, again without contradiction, was the normal timeframe for the type of injury he suffered.

To the extent Mr. Love's theory is that his pain would have subsided more quickly had he been given additional pain medication, such that Nurses Anderson and Linda needlessly prolonged his suffering by failing to give him "more" medication, that theory likewise finds no traction in the competent evidence. Mr. Love was already taking multiple types of painkillers for various chronic conditions, and his vague speculation that some unspecified additional medication would have alleviated his concussive pain— even assuming that any were indicated on top of the medications he was already taking—is insufficient to allow a jury to find in his favor. *See Gabb,* 945 F.3d at 1033 (the plaintiff's argument that he suffered because of the defendant's "refusal to adopt a 'better' course of treatment" was insufficient to withstand summary judgment because the plaintiff "does not tell us what that specific treatment was or how it would have alleviated his back pain.")

Nor does Mr. Love point to any evidence suggesting that any act or omission by Dr. Osmundson, Nurse Orkies, or Nurse Brittany

11

caused him any injury. These defendants' factual statements emphasize evidence that Mr. Love's periodic headaches, back pain, and other problems he experienced while at IRCC and thereafter resulted from one or more of his numerous chronic conditions that predated his incarceration. Mr. Love objects to these statements as "immaterial" because no one disputes that he suffered a concussion from his fall in the Cook County Jail bathroom. *See*, e.g., Pl.'s L.R. 56.1 Resp., ECF 253 at ¶¶ 7-8, 11-23. But the fact of his concussion does not *per se* establish that any symptoms he experienced months and even years later were the result of the treatment he received (or did not receive) while at IRCC. It bears recalling that the burden is on Mr. Love to prove that the injuries he asserts were caused by some act or omission by defendants. His subjective belief that his ongoing symptoms were the result of their failure to treat his concussion appropriately is insufficient on that score, particularly in light of Dr. Ackerman's unchallenged contrary opinion.

While the foregoing analysis is directed to Mr. Love's constitutional claims, the absence of evidence suggesting a causal link between defendants' conduct and the harm he claims to have suffered likewise dooms his negligence claims against these defendants. The essence of a negligence claim is the allegation that "certain individuals *should* have acted differently in light of the duties applicable to them, and that their failure to abide

12

by the relevant standard of care caused [the plaintiff] personal injury."). *Grieveson v. Anderson*, 538 F.3d 763, 780 (7th Cir. 2008) (italics in original, additional emphasis added). Mr. Love's claim falls short on several fronts, since, as defendants observe, he fails to identify or engage with the relevant standard of care, and he also fails to say how defendants should have acted differently. But even ignoring these deficiencies, for the reasons explained above, the record simply does not allow a reasonable jury to conclude that any defendant's conduct caused Mr. Love to suffer a compensable injury.

### III.

For the foregoing reasons, defendants' motions for summary judgment are granted.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: January 28, 2025